(No. 14570.—Reversed and remanded.)

The Chicago, Wilmington and Franklin Coal Company, Defendant in Error, vs. The Industrial Commission et al.—(Victor Mathias, Plaintiff in Error.)

*Opinion filed June 21, 1922.*

1. Workmen's compensation—*dependency is a question of fact for the Industrial Commission.* Dependency, and the extent thereof, are questions of fact for the Industrial Commission, and the courts will not interfere when such facts are controverted, unless it can be said that the finding of the commission is against the manifest weight of the evidence.

2. Same—*what is test for determining dependency.* The test for determining dependency is whether the contributions of the deceased were relied upon by the dependent for his means of living as determined by his position in life, or whether the dependent was to a substantial degree supported by the employee at the time of the employee's death.

3. Same—*when a child contributes to support of parents.* A child contributes to the support of its parents, within the meaning of the Compensation act, when it contributes a substantial sum to the support of the family although the child is a minor and the sum contributed is less than the actual cost of his support.

4. Same—*when father is a dependent of minor son.* A father may be regarded as a dependent of his deceased son, who was eighteen years old, where the father was unable to work because of ill-health and the son contributed a substantial portion of his earnings to the support of the father as well as the entire family.

5. Same—*when injury arises out of and in course of employment.* An injury which can be seen to have been a natural incident of the work or a natural result from the nature of the employment may be said to arise out of the employment, and an injury happens in the course of the employment if it occurs while the employee is doing what he may reasonably be expected to do during the time he is employed and at a place where he may reasonably be during such employment.

6. Same—*whether employee was violating rule is a question of fact.* Whether the act of the employee at the time of the injury was contrary to his employer's rules or in accordance with a custom acquiesced in by the employer or at the direction of the employer is a question of fact for the Industrial Commission, and its finding will not be set aside by the courts, where the facts are controverted, unless against the manifest weight of the evidence.

7. Same—*when violation of rules will not bar compensation.*
Where it is proved to have been the custom in a mine to recruit
its drivers from the trappers, compensation for an injury to a trap-
per while driving one of the cars during the noon hour at the re-
quest of one of the drivers is not barred by violation of a rule pro-
hibiting trappers from driving cars, where it is also shown that
the trapper had about completed his apprenticeship as a driver and
was next in line for promotion to that position.

Writ of Error to the Circuit Court of Macoupin
county; the Hon. Frank W. Burton, Judge, presiding.

Kerr, MacDonald & Murphy, for plaintiff in error.

John J. Sherlock, and Truman A. Snell, for de-
fendant in error.

Mr. Justice Stone delivered the opinion of the court:

Frank Mathias, son of the plaintiff in error, was injured
while working in the mine of the defendant in error on
the 28th day of September, 1920, and on that date died
as the result of such injury. The deceased and defendant
in error were working under the Workmen's Compensation
act of this State and subject to its provisions. A hearing
was had before the arbitrator and an award entered in favor
of the plaintiff in error for $7 per week for a period of
235 weeks, or a total of $1650, being the minimum under
paragraph (*c*) of section 7 of said act. This award was
sustained on review by the Industrial Commission. The
circuit court of Macoupin county set aside the award.

Two questions are presented by the assignment of er-
rors for review by this court: First, dependency; and sec-
ond, did the accident arise out of and in the course of the
employment of the deceased.

As to the question of dependency, the evidence in the
record shows that the deceased was eighteen years of age
on April 18, 1920; that the petitioner is the father of the
deceased and at the time of the accident in question had

nine children living at home; that the oldest boy, Steve, was working in the mine of the defendant in error and became twenty-one years of age on August 21, 1920; that no other members of the family were old enough to work and none of them were working; that the petitioner, until May, 1920, worked in the mine of the defendant in error, but on account of sickness and inability to work had not worked since that time; that Steve, at the time of the accident, had taken the place of the plaintiff in error in the mine; that after becoming of age Steve paid $48 per month to his mother for board; that the father earned prior to May, 1920, when the mine worked practically full time, about $200 per month and in slack time about $90 per month; that Steve, after becoming of age, earned practically the same amount as the father; that the deceased son, when the mine was working full time, had an earning capacity of about $60 per month; that the entire family expense was approximately $200 per month; that the living expenses of the father and mother, without the children, would be in the neighborhood of $75 per month; that after Steve became of age he collected his own wages and spent the same for his own use except the $48 above stated, and that the deceased son lived at home with his father and mother and contributed in the neighborhood of $60 a month to the use and support of the family. Plaintiff in error, at the time of the death of Frank, was receiving about $108 per month from the two boys.

Dependency, and the extent thereof, are questions of fact for the Industrial Commission, and the courts will not interfere when such facts are controverted, unless it can be said that the finding of the commission is against the manifest weight of the evidence. (*Otis Elevator Co.* v. *Industrial Com.* 302 Ill. 90; *Keller* v. *Industrial Com.* id. 610.) The test for determining dependency is whether the contributions of the deceased were relied upon by the dependent for his means of living as determined by his position

in life, or whether dependent was to a substantial degree
supported by the employee at the time of the employee's
death. (*Pratt Co.* v. *Industrial Com.* 293 Ill. 367.) A child
contributes to the support of its parents, within the meaning
of the Compensation act, when it contributes a substantial
sum to the support of the family, although this sum is less
than the actual cost of its support and maintenance where
the child is a minor or is in a condition to demand legal
support from its parent. (*Richardson Sand Co.* v. *Indus-
trial Com.* 296 Ill. 335.) The uncontradicted evidence in
this case shows that in May prior to the accident in ques-
tion the father had ceased working in the mine or at any
other employment on account of poor health, and that at
the time of the accident the oldest son, Steve, had become
twenty-one years of age and had taken his father's place
in the mine, and that the deceased had contributed a sub-
stantial portion of his earnings to the support of the father
as well as of the entire family. Under the tests laid down
by this court the plaintiff in error was a dependent with-
in the terms of the Compensation act.

As to the question whether or not the accident arose
out of and in the course of employment, the evidence shows
that the deceased was employed by the defendant in error
as a trapper, whose duties are to open doors for drivers,
kick latches for them, and give signals when it is safe for
the driver to come ahead or warning to stop when it is un-
safe for the driver to approach the door or station at which
the trapper stays; that at the noon hour on the day of
the accident Johnny Trojeck, a driver, asked the deceased
to take the mule of another driver and go into the mine
and bring some cars of coal from a place beyond the door
where the deceased was trapping; that this was during the
dinner hour and before the whistle had blown to go to work;
that the deceased brought one car of coal to the parting and
then went back for the second, all of which were cars in
Trojeck's run; that while bringing this second car to the

parting the deceased lost control of the same and was thrown off and severely injured, from which injury he soon died. The testimony further shows that there was a custom in this mine to recruit the drivers of the cars drawn by mules that were used in hauling coal from the working face to the bottom of the mine from among the trappers, who learned to drive by making extra trips for the drivers; that after a trapper had driven as an extra driver he was then employed as a driver; that the deceased was one of the older trappers in the mine and had been driving for other drivers a few days a week for a period of three months previous to his death, and he had been authorized by the driver-boss, on at least one occasion, to act as an extra driver and had been paid as an extra driver for one shift; that other drivers then in the mine had acquired their previous experience in this way; that this custom or method of acquiring experience so as to be selected as a driver was acquiesced in by the officers of the mine and was known to exist by the driver-boss. On this occasion, however, the particular act done by the deceased was not authorized by the driver-boss nor was it done to his knowledge. It was done solely at the request of another driver.

An injury which can be seen to have been a natural incident of the work and to have been contemplated by a reasonable person as a result of the exposure occasioned by the nature of the employment may be said to arise out of the employment. (*Edelweiss Gardens* v. *Industrial Com.* 290 Ill. 459.) An accident happens in the course of employment if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed and at a place where he may reasonably be during that time to do that thing. (*Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284.) Whether or not the defendant in error or its agents in charge of the work knew of the practice of trappers to acquire their training as drivers by occasionally driving for other driv-

ers or driving on extra trips at the direction of the driver-boss being a controverted question of fact for the Industrial Commission, its finding in that respect will not be set aside by the courts unless against the manifest weight of the evidence. *Keller* v. *Industrial Com. supra.*

There is some testimony in the record tending to show caution and warnings by the driver-boss that certain trappers should not be permitted to drive. This, however, seems to have been confined to the newly employed trappers and not to those who had been trapping for the length of time that the deceased had been employed. There was also some evidence brought out on cross-examination that there was in this mine, at the time of the accident, some rule of employment governing the conduct of trappers when acting as drivers. The defendant in error, however, produced no testimony from the officers in charge of the mine as to this rule or its provisions. The most that can be said of it is, that as to newly employed trappers greater caution should be observed than as to the older ones; that as the time of employment lengthened a greater freedom existed as to the method of obtaining experience which would qualify a trapper to become a driver. The deceased was one of the first in line to be employed as a driver had not the fatal accident occurred.

While this accident occurred during the noon hour, when the mine was not in operation, nevertheless it was an act which the deceased might reasonably be expected to do at that time and in that place in order to acquire experience which would qualify him to be employed as a driver. To perform the act in question at the time and place would be less hazardous and less likely to result as it did than had he attempted to do the same act when the mine was in operation, and at this particular time he could leave his post of duty at the door and perform this act without violating his duty as a trapper. While it was done at the request of another driver, nevertheless it was in the

303—35

nature of an act which might reasonably be expected of an apprentice or one endeavoring to learn to do another act of greater skill and thereby acquire promotion. When a custom exists, as shown here, to recruit drivers from trappers, and a rule prohibiting trappers driving—if there was such a rule—is not observed, and the officials of the company know of such failure to observe the same, violation of the rule does not bar compensation. (*Sesser Coal Co.* v. *Industrial Com.* 296 Ill. 11.) The evidence shows that the deceased had at times been paid extra for driving. This also would indicate knowledge and acquiescence on the part of his employer.

For the foregoing reasons the judgment of the circuit court is reversed and the cause remanded, with directions to quash the writ and confirm the award.

*Reversed and remanded, with directions.*

(No. 14558.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOE SECCO *et al.* Plaintiffs in Error.

*Opinion filed June 21, 1922.*

1. CRIMINAL LAW—*when objections to selection of grand and petit juries cannot be considered.* Objections to the selection of the grand and petit juries which do not appear from an inspection of the common law record cannot be considered by the Supreme Court where there is no bill of exceptions.