The plaintiff has petitioned for a rehearing. In his petition he correctly avers that the action was brought under the Employers’ Liability Act of this state. See Chapter 3, General Laws of Oregon 1911, codified as Sections 6785-6791, Oregon Laws.
 

 Plaintiff alleged that the defendant Lumber Company employed about 75 men. for the purpose of cutting sawlogs and transporting them to its sawmill, and that such employment constituted a hazardous occupation “within the purview of the Workmen’s Compensation Law of the State of Oregon, being sections 6605 to 6695, both inclusive, of Oregon
 
 *17
 
 Laws.” The defendant company having rejected the protection of the Workmen’s Compensation Law, the plaintiff, while prosecuting his case upon the theory that the company was liable under the provisions of the Employers’ Liability Act, invoked that section of the Compensation Law depriving the company of certain defenses therein enumerated: Section 6605, Or. L. However, in order to take from the defendant any defense by virtue of that section, it was necessary to prove that plaintiff was an injured workman within the meaning of that law, and we directed our former opinion largely to that issue.
 

 For a full statement of the facts, see our opinion rendered on February 9, 1926, reported in 243 Pac. 96.
 

 Before any action can properly be brought under the Employers’ Liability Act, it must be averred and established by proof that the employee was engaged .in the scope of his .employment, for his employer, at the time of the accident: 1 Dresser, Employers’ Liability, § 13. In the same section, the author states:
 

 “The rights and duties incident to the relation apply only while the servant is under the master’s power of control and is performing services for him. At other times, he is a stranger, with the rights and duties of a stranger.”
 

 A leading case on this subject is that of
 
 Elliott
 
 v.
 
 Payne,
 
 293 Mo. 581 (239 S. W. 851, 23 L. R. A. 706). This was an action under the federal Employers’ Liability Act, making the employer liable for injuries resulting from defects in cars, engines, appliances, machinery, tracks, roadbeds, works or other equipment. Concerning the question as to whether the employee who was killed was required to show that, at
 
 *18
 
 the time of the injury, he was about the business of his master, the court said, in an exhaustive opinion:
 

 “The cases (both Federal and state) all hold that the burden is upon the plaintiff to show that the servant was about the business of the master at the time of the injury. Without this pleading and proof there can be no recovery. * *
 

 “There may be incidental cessations from the work being done by the servant, without the loss of a right to recover if injury happens to the servant whilst upon the premises of the master, and through the negligence of the master. These cessations must be for purposes which are fairly within contemplation of the parties when the contract was made. Absence from the place of business for the servant’s own individual purposes defeats his right of action. The exception to this broad rule we find well worded in the case of
 
 Ingram
 
 v.
 
 Rutland R. Co.,
 
 89 Vt. loc. cit. 281 (95 Atl. 545, Ann. Cas. 1918A, 1191), whereat the general rule and the exceptions are stated, with a wealth of cases, in the following language:
 

 “ ‘We are not unmindful of the general rule’ that puts a servant outside a recovery from his master, where he has, when injured, left his working place and gone elsewhere bn some errand of his own. In such a case, the relation of master and servant is temporarily suspended and is not restored until the servant’s return. So, if Ingram’s conduct amounts to such a departure from the business of his employer, there can be no recovery here; during his absence from his post the defendant would not owe him the duty of active care, and no actionable negligence would be shown by this record. It is not always necessary, however, to entitle a servant to recover against his master, that he should be at the moment of injury actually at work in his proper place and in the business of the master. The law allows him some measure of latitude; and while there is a sharp conflict in the cases as to the limits of this latitude, and some apply the general rule above referred to with great strictness, there is much to commend in the in
 
 *19
 
 clination manifested by some courts toward a liberal regard for the just interests of the servant in such cases:
 
 Southern R. Co.
 
 v.
 
 Bentley,
 
 1 Ala. App. 359 (56 So. 249.) So, the circumstances may be such that the master’s duty will cover the servant’s trip across the premises to and from his working place
 
 (Janilus
 
 v.
 
 International Paper Co.,
 
 112 Me. 519 (92 Atl. 653);
 
 Whatley
 
 v.
 
 Zenida Coal Co.,
 
 122 Ala. 129 (26 So. 124);
 
 Virginia Bridge & I. Co.
 
 v.
 
 Jordan,
 
 143 Ala. 610 (42 So. 73, 5 Ann. Cas. 709); and the circumstances may be such that a servant may step aside to get a drink of water
 
 (Birmingham Rolling Mill Co.
 
 v.
 
 Rockhold,
 
 143 Ala. 115 (42 So. 96); W
 
 oodward Iron Co.
 
 v.
 
 Curl,
 
 153 Ala. 215 (44 So. 969);
 
 Jarvis
 
 v.
 
 Hitch
 
 (Ind. App.), 65 N. E. 608); may go inside a building to get warm
 
 (Parkinson Sugar Co.
 
 v.
 
 Riley,
 
 50 Kan. 401 (31 Pac. 1090, 34 Am. St. Rep. 123); may withdraw to answer a call of nature
 
 (Houston & T. C. R. Co.
 
 v.
 
 Turner,
 
 99 Tex. 547 (91 S. W. 562); may stop to talk with a fellow-workman
 
 (Moore
 
 v.
 
 Pickering Lbr. Co.,
 
 105 La. 504 (29 So. 990); may go to a convenient place to eat or wash
 
 (Muller
 
 v.
 
 Oaks Mfg. Co.,
 
 113 App. Div. 689 (99 N. Y. Supp. 923);
 
 Low
 
 v.
 
 General Steam Fishing Co.
 
 (1909), A. C. 523, 78 L. J. P. C. (N. S.) 148, 101 L. T. (N. S.) 401, 25 Times L. R. 787, 53 Sol. J. 763;
 
 Rhea
 
 v.
 
 Missouri P. R. Co.,
 
 171 Mo. App. 160 (156 S. W. 4); to get fresh air
 
 (McCloherty
 
 v.
 
 Gale Mfg. Co.,
 
 19 Ont. App. Rep. 117); to hang up his coat
 
 (Cordler
 
 v.
 
 Keffel,
 
 161 Cal. 475 (119 Pac. 658); or even to rest
 
 (Jacobson
 
 v.
 
 Merrill & R. Mill Co.,
 
 107 Minn. 74 (119 N. W. 510, 22 L. R. A. (N. S.) 309); without forfeiting his rights as an employee. See note to
 
 Charron
 
 v.
 
 Northwestern Fuel Co.,
 
 149 Wis. 240 (134 N. W. 1048, Ann. Cas. 1913C, 939).’ ”
 

 See, also, 2 Dresser, Employers’ Liability, §§ 102-105.
 

 We have been cited to no decision, nor are we able to find any authority, that supports the proposition
 
 *20
 
 that the plaintiff was a workman within the scope of his employment at the time he sustained his injury.
 

 Plaintiff further contends that the failure of the defendant company to run its train to the logging- camp on Saturday was the proximate cause of his injury on Monday night thereafter. In this contention counsel overlooks the rule that the proximate cause is the dominant cause from which the injury follows as a direct and immediate consequence. It is the immediate, and not the remote, cause which is regarded. And, in applying the law to the facts, that damage which does not flow proximately from the act complained of is rejected. If an injury has resulted from a certain wrongful act or omission, but only throug-h some intervening cause, from which last cause the injury followed as a direct and immediate result, the law will refer the damage to the last or proximate cause and refuse to trace it to the more remote. Moreover, if common experience does not show the wrong and the resulting damage to be naturally in sequence, and the damage does not in the ordinary course of events follow from the wrong, “then the wrong and the damage are not sufficiently conjoined or concatenated as cause and effect to support an action.” 1 Cooley on Torts (3 ed.), p. 99.
 

 In view of the whole of the facts of record relating to the character of the storm and the comforts of the camp, can it be said that the defendant company might have foreseen that some injury would result from its act or omission in failing to run its train to the logging camp on Saturday night, or, that consequences of a general injurious nature might have been expected to follow such omission? We think this question must be answered in the negative. See
 
 *21
 

 Voshall
 
 v.
 
 Northern Pacific Terminal Co.
 
 (Or.), 240 Pac. 891.
 

 Though much has been written concerning the “proximate cause” of an injury, there has been adduced no certain rule by the application of which it is possible to draw nice distinctions between a proximate and a remote cause. See
 
 Atchison etc. Ry. Co.
 
 v.
 
 Calhoun,
 
 213 U. S. 1 (53 L. Ed. 671, 29 Sup. Ct. Rep. 321, see, also, Rose’s U. S. Notes). The proximate cause of an injury is ordinarily a question of fact to be determined by the jury. But, when the facts clearly settle that only one inference can be drawn therefrom, it is the duty of the court to take the case from the jury and direct a verdict or a nonsuit, as the circumstances require: 1 Shearman & Redfield on the Law of Negligence (6 ed.), §§ 55, 56.
 

 We quote below a definition of negligence that seems unexceptionable:
 

 “Negligence, constituting a cause of civil action, is such an omission, by a responsible person, to use that degree of care, diligence, and skill, which it was his legal duty to use for the protection of another person from injury as, in a natural and continuous sequence, causes unintended damage to the latter.” 1 Shear-man & Redfield on the Law of Negligence (6 ed.), §3.
 

 The trial court held, in effect, that a judgment for plaintiff could not be based upon mere “surmise” or “conjecture.” Through life we have all met many persons who have sustained injuries, the consequences of which the unfortunate sufferers must bear without redress. In the cause at issue, the plaintiff, not on the business of the defendant company, but voluntarily, chose to quit a place of safety supplied to him by it, and ventured on a journey of sixteen miles through four feet of snow, whereby his body was
 
 *22
 
 exposed to the frigid blasts that swept the snow clad mountain. Here is presented a case which, while it excites our sympathy, offers to us no leg'al right to compensate the plaintiff for the injuries he has received. We have gladly, earnestly and with an open mind examined plaintiff’s able and persuasive petition for rehearing. An erroneous ruling should never stand. But ‘ ‘ a court has no right to strain the law because it causes hardship.”
 
 Body
 
 v.
 
 Halse,
 
 (1891), L. R. 1 Q. B. (1892), p. 207.
 

 We are compelled to deny the petition for rehearing.
 

 Rehearing Denied.
 

 McBride, C. J., and Bean and Belt, JJ., concur.