Argued March 26; affirmed April 23; rehearing granted July 2,
1929; reversed on rehearing March 18; second petition
for rehearing denied September 9; motion to
affirm denied September 16, 1930

# *VARRELMAN v. FLORA LOGGING CO.

(277 P. 97, 286 P. 541, 290 P. 751)

* On appeal to the United States Supreme Court.

*Frank S. Senn* of Portland and *Miles H. McKey* of Salem (Senn & Recken of Portland and James E. Burdette of McMinnville, on the brief) for appellant.

· *Arthur I. Moulton* of Portland (Lord & Moulton of Portland, on the brief) for respondent.

BROWN, J. ■ In point of fact this case is practically on all fours with the case of *Lamm v. Silver Falls Timber Co.* decided this day, and a decision of the one would control the other. As stated by counsel for defendant herein, the chief question to be determined is whether or not the plaintiff was in the employ of defendant at the time he sustained his injury. Plaintiff says he was not employed by the defendant at that time. The defendant says he was so employed.

Or. L., § 6616, as amended by chapter 133, General Laws of Oregon, 1925, relating to industrial accidents and compensation therefor by the state, reads:

"Every workman subject to this act while employed by an employer subject to this act who while so employed sustains personal injury by accident *arising out of and in the course of his employment* and resulting in his disability * * *, shall be entitled to receive from the Industrial Accident Fund * * * the sum or sums hereinafter specified and the right to receive such sum or sums shall be in lieu of all claims against his employer on account of such injury * * *."

Plaintiff's testimony indicates that he was 38 years old at the time of the trial, and, for four or five years prior thereto, had been a logger, receiving a wage of $5.40 to $7 per day; that he had worked for the Flora Logging company at their camp off and on for four or five months next preceding the time of the accident, during which time he boarded at the camp cookhouse, paying about 45 cents a meal for his board, and slept in one of the bunk houses, for which he was charged a dollar a week; that during these months he quit working and left the camp "seven, eight, or ten times" for a few days at a time because, he said, "I would get tired of working and come in to rest up for a few days." He testified that, during the time he was not working, or after he finished work at night, no person had any supervision over him, or anything to say as to what he did with his time. His version of the accident, and what took place at that time, is as follows:

About 8 o'clock on Saturday morning, October 30, 1926, he left camp and bought a ticket for Carlton, and from there went on to Portland "to get some shoes and

clothes." On being asked if he performed any errand or service for the company at any time after he left the camp, he testified:

"Absolutely not. I just delivered a message the camp foreman wanted me to deliver, to tell a man that he wanted him to come out to camp."

He came back to Carlton Sunday evening on one of the Portland stages, and there bought a ticket from Carlton back to camp. They started for the camp on one of the big speeders. When they were within eight or ten miles of camp the speeder broke down, and, after some little waiting, the passengers were transferred to a little speeder to complete the trip. They again started on their way, traveling between 30 and 35 miles an hour, and when they attempted to round a curve the speeder "got to lurching on the curve there back and forth * * * and the crowd got to lurching too and crowded me off, and it ran over me."

Mrs. E. L. Grewell, called on behalf of the defendant, testified that she was a passenger on the speeder at the time of the accident, and that, in her judgment, the plaintiff was "quite badly intoxicated" when the accident occurred; that she heard a good deal of boisterous talking, and smelled liquor in the car. When asked how she knew plaintiff had been drinking she answered:

"You usually can tell when a person is under the influence of liquor by his breath.

Q. So you smelled his breath? A. Yes."

She testified that the plaintiff and two others who were more or less intoxicated boarded the speeder together, and as to their subsequent conduct she made the following statement:

"They opened a can of dill pickles and oysters and held their hands over the top of it and poured the juice

all over the floor, on the seats, or wherever it happened to go. It didn't seem like men would do that unless they were slightly intoxicated.''

An injury arises in the course of the employment within the meaning of the Workmen's Compensation Law ''when it occurs within the period of the employment at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it.'' 2 Words & Phrases (Third Series), p. 594.

See, also, *Granite Sand & Gravel Co. v. Willoughby*, 70 Ind. App. 112 (123 N. E. 194); *N. K. Fairbank Co. v. Industrial Commission of Illinois*, 285 Ill. 11 (120 N. E. 457); *Eugene Dietzen Co. v. Industrial Board of Illinois*, 279 Ill. 11 (Ann. Cas. 1918B, 764, 116 N. E. 684); *Jeffries v. Pitman-Moore Co.*, 83 Ind. App. 159 (147 N. E. 919); *Bryant v. Fissell*, 84 N. J. Law 72 (86 Atl. 458); *Walther v. American Paper Co.* (N. J.) 98 Atl. 264; *Chicago, Wilmington & Franklin Coal Co. v. Industrial Commission*, 303 Ill. 540 (135 N. E. 784); *New Amsterdam Casualty Co. v. Sumrell*, 30 Ga. App. 682 (118 S. E. 786).

The case of *Reed v. Bliss & Van Auken Lumber Co.*, 225 Mich. 164 (196 N. W. 420), is similar to the case under consideration; and, in review of that case, the Michigan court says:

''In the instant case deceased had finished his work for the week and had drawn his pay. He owed no duty to his employer until the following Monday. He was free to go where he pleased and as he pleased; he left the employer's premises by means entirely of his own choosing (automobile of a fellow employee), over which the employer had no control. Arriving in the street he was killed by an engine, an instrumentality over which the employer likewise had no control. Under these cir-

cumstances, I think it should be said as matter of law that the accident did not arise out of decedent's employment and that it was not in the course thereof.''

A case squarely in point with the case at bar is *Norwood v. Tellico River Lumber Co.*, 146 Tenn. 682 (244 S. W. 490, 24 A. L. R. 1227); and the following from Point 1, Syl., of the opinion rendered therein indicates the holding of the court:

''Where employer, as a part of the contract of employment, permitted employees going to and from their work to ride free on logging trains running between a town and employer's logging camp, and an employee, who left his home at the camp Saturday afternoon, after working hours, for purpose of visiting his father in town, was injured by the lurching of the train while returning to camp Sunday afternoon, his injury did not arise 'out of and in the course of employment,' within the Workmen's Compensation Act, the trip being personal, and therefore the statute could not be invoked to defeat recovery in a common-law action.''

See *Simons v. Oregon R. R. Co.*, 41 Or. 151 (69 P. 440, 1022); *Putnam v. Pacific Monthly Co.*, 68 Or. 36 (130 P. 986, 136 P. 835, 45 L. R. A. (N. S.) 338, L. R. A. 1915F, 782, Ann. Cas., 1915C, 256).

The record in this case plainly shows that the **plaintiff** was not engaged in furthering the interests of his employer at the time he received his accidental injuries, but that these injuries were received on an occasion when time was his own. He had gone to Portland on personal business. The fact that he rendered a favor to his employer by conveying a message to some workman in Portland while there did not constitute him an employee of defendant. He was receiving no pay from the defendant on the day he was injured. His trip from the camp to Portland was made on his own time and for his own personal reasons. According to the testi-

mony of the defendant, plaintiff's injury was sustained through his own carelessness while under the influence of some intoxicating beverage. Clearly he was not in the service of his employer at the time he fell from the speeder.

As to the contention that plaintiff was guilty of contributory negligence, that question was submitted to and determined by the jury.

■■ The defendant asserts that the provisions of the compensatory act should receive a liberal construction. In answer we invite attention to the familiar canon of statutory construction that, where an enactment is neither ambiguous nor obscure, the plain, natural, usual import of the words and phrases embodied therein present the surest and safest mode of ascertaining legislative will. Moreover, the legislature is presumed always to have used words in their known and ordinary signification unless that sense is repelled by the context. See 1 Fed. Stats. Ann., pp. 42, 43.

The decision of the trial court in this case is fair and just. This court has no right, by construction or implication, to stretch, enlarge, or torture the meaning of the words and phrases embodied in the Oregon Workmen's Compensation Law. If this statute shall be enlarged so as take into its protective embrace those persons who are not employed at the time of sustaining injury, it must be done by legslation, and not by the judiciary.

We have carefully considered all of the alleged errors and discover no valid reason for reversing this case. Hence we direct its affirmance.

Coshow, C. J., and Bean and Belt, JJ., concur.

Former opinion and judgment of circuit court reversed on rehearing March 18, 1930

On Rehearing

(286 P. 541)

*Omar C. Spencer* and *Frank S. Senn*, both of Portland (Senn & Recken of Portland and James Burdett of McMinnville, on the brief) for appellant.

*Arthur I. Moulton* of Portland (Lord & Moulton of Portland, on the brief) for respondent.

*Miles H. McKey*, Assistant Attorney General (I. H. Van Winkle, Attorney General, on brief) for State Industrial Accident Commission.

ROSSMAN, J. The material facts of this case are the same as those disposed of today in *Lamm v. Silver Falls Timber Co.* The statement of facts set forth therein is substantially sufficient to indicate the relationship between the plaintiff and the defendant; it seems desirable, however, to particularly notice the following: The plaintiff left defendant's camp Saturday, October 30, 1926, at 8 a. m., to go to Portland for the purpose of purchasing some shoes and clothing. Before beginning his trip he did not terminate his employment; no such thought was present in his mind nor in the defendant's. Upon the other hand he expected to resume work for the defendant Monday morning at 7:30 o'clock and the defendant entertained a like expectation; in fact he was injured in the near vicinity of the camp while upon his return. Plaintiff's brief cessation of labor was satisfactory to his employer; here it seems pertinent to mention that as a courtesy to the latter he performed an errand for it in Portland. The trip from camp to Carlton, which

is the end of the logging railroad, is 27 miles in length. The plaintiff testified that practically no one uses this railroad, except the defendant and its employees, and that it constitutes the only means of ingress to and egress from the scene of defendant's operations. The ownership of the railroad was thus: from Carlton to Tillamook Gate it is owned by a corporation entitled Carlton & Coast Railroad company; from Tillamook Gate to the camp it is owned by the defendant; both the latter and the Carlton & Coast Railroad company are owned by the Carlton Consolidated Lumber company. The plaintiff's injuries befell him upon the portion owned by defendant. Before undertaking his trip he purchased a ticket at a cost of 60 cents, which was issued by the Carlton & Coast Railroad company, and which provided that it entitled the purchaser to ride from Carlton to Tillamook Gate. After the conveyance upon which the plaintiff was riding had reached a point beyond Tillamook Gate it failed to operate, and a conveyance known as a speeder was sent by the defendant to convey the passengers to camp. Those aboard the disabled vehicle mounted the speeder and the journey was resumed. No new fare was charged, and as we have seen the plaintiff's ticket entitled him to a ride from Carlton to Tillamook Gate only. All the controversies presented by the above facts, except that arising out of the charge for transportation, are controlled by the disposition made of the similar facts in *Lamm v. Silver Falls Timber Co.* We believe that the charge for transportation does not demand a different result for the following reasons: (1) plaintiff's injury was sustained at a place beyond the point for which a fare was charged; hence, we may assume that this portion of his transportation was given as an incident of his employment; (2) the palintiff's trips back and forth

were incidental to his employment and made necessary by it; they were undertaken upon a conveyance furnished by the employer and operated upon its premises. These circumstances are more favorable to the defendant than those present in *American Coal Mining Co. v. Crenshaw,* 77 Ind. App. 644 (133 N. E. 394), and *Central Const. Co. v. Harrison,* 137 Md. 256 (112 Atl. 627). In each of those cases it was held that since the journeys upon the conveyance were incidental to the employment and were undertaken upon a vehicle provided by the employer, the payment of a fare was an immaterial fact. The same conclusion, we believe, is justified by the circumstances before us.

It follows that our previous decision was in error, that the judgment below should be reversed, and that the plaintiff's action should be dismissed.

BELT, J., McBRIDE and RAND, JJ., concur.

---

BROWN, J. (dissenting). This cause was submitted on rehearing with the case of *Lamm v. Silver Falls Timber Co.* For a statement of the facts and the law applicable thereto, see the original opinion. This was a companion case to the other, and in our disposition of the case we called attention to our discuussion of the law appearing in the Lamm case which was decided at the same time.

The defendant in the instant case appealed from a judgment of $9,000 recovered by plaintiff in a common-law action based upon personal injuries alleged to have been sustained by him when riding as a passenger upon defendant's speeder by invitation of defendant. The point discussed on rehearing, and made by the petition therefor, relates to the question as to whether the plaintiff and defendant were subject to the Oregon Workmen's Compensation Act.

Did the court err in instructing the jury over the defendant's objection and exception that the defense made by defendant to the effect that it was under the protection of the Workmen's Compensation Act was removed from the cause? The defendant contends that the injuries sustained by plaintiff were compensable under the compensation act, and that for that reason he was entitled to receive pay for his injuries from the industrial accident fund of the state of Oregon, and not from the defendant. On the other hand, the plaintiff denies that he was under the protection of the act. The record plainly shows that the plaintiff's injuries were sustained during a brief vacation taken for the purpose of having a frolic of his own, and that during this time he was not engaged in forwarding the business of the defendant. He says that he was rendering no service for the company, and was not subject to its orders, direction or control at the time he was thrown from the speeder. In this connection we call attention to the following excerpt from the case of *Lavery v. Grand Trunk R. Co.*, 24 D. L. R. 522: .

"The principle underlying the Workmen's Compensation Act is, that the employer is practically the insurer of his employee against risks of accidents which may happen in the course of his work, and while he is under the control and orders of his employer, and while his time is being used for the benefit of his employer."

According to the undisputed testimony, when the plaintiff herein sustained his injury forming the basis of this action, his time was his own. On Saturday morning, October 30, 1926, he left the logging camp of the defendant where he had been employed for four or five months, and went to Portland on personal business. He says that during these months he had made

from six to ten similar journeys to Portland on business of his own. He returned from this particular trip on Sunday evening, October 31, and while being transported to camp by a speeder operated by the defendant company he was thrown to the ground and the speeder passed over his body. During the time he was absent from the logging camp where he lived when employed, he was not engaged in the furtherance of any business of his employer. He received no wages on Saturday or Sunday, the days of his absence, and contributed nothing to the industrial accident fund for insurance.

The principle governing a situation such as the one before us is set down by Corpus Juris at page 85, Workmen's Compensation Acts, in this language:

"Where, although the injury arises from a risk of the occupation, it is received while the employee has turned aside from the employment for his own purposes, he can not be awarded compensation."

Our practice is in harmony with this rule.

From the facts related above, it is obvious that plaintiff had broken the continuity of his employment and had gone to Portland on a venture of his own.

With further reference to a like situation, we quote the following pertinent excerpt:

"Where the employee, for his own purposes, has left the place at which his work is performed and has broken the continuity of his employment, an accident which happens during such break in the employment can not be held to happen in the course of the employment": Workmen's Compensation Acts, C. J., pp. 81, 82.

See, also, section 72, page 80, where the same authority says:

"It has been said that in general terms an injury to an employee arises in the course of his employment when it occurs within the period of his employment,

at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it.''

In 28 R. C. L., § 92, Workmen's Compensation Acts, it is written:

''To bring his case within the compensation act, the employee must show, as he was required to establish under the common law, that he was at the time of the injury engaged in the employer's business, or in furthering that business, and was not doing something for his own benefit or accommodation.''

This expression, couched in language plain and clear, seems to the writer peculiarly persuasive.

In the companion case of *Lamm v. Silver Falls Timber Co,* supra, we attempted to define the phrase ''arising out of and in the course of his employment,'' as used in the Workmen's Compensation Act. We there quoted and adopted the definition of this phrase appearing in the leading case of *McNicol's Case,* 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A 306). For a discussion of this definition, see 28 R. C. L., Workmen's Compensation Acts, § 89. We likewise followed the doctrine expounded in the case of *Brady v. Oregon Lbr. Co.,* 117 Or. 188, 118 Or. 15 (243 P. 96, 245 P. 732, 45 A. L. R. 812), where we quoted with approval from 1 Dresser, Employer's Liability, § 13, as follows:

''The rights and duties incident to the relation [employer and workman] apply only while the servant is under the master's power of control and is performing services for him. At other times he is a stranger, with the rights and duties of a stranger.''

In our discussion of the *Lamm* case, we also referred to the definitions given by other courts to the effect that an accident arises in the course of the

employment when it occurs within the period of the employment at a place where the employee reasonably may be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto.

In the case of *Walker v. Hyde et al.,* 43 Idaho 625 (253 P. 1104), the meaning of the phrase ''arising out of and in the course of employment'' was the subject of dispute. In that case the claimant was employed to cut timber and, while returning from his labor, attempted to get onto a truck for a ride. The accident resulted. In a well written opinion it was held that the claimant in a compensation case has the burden of showing that the injury sustained arose out of and in the service at which the injured person was employed. Continuing it was likewise held that the truck in question not having been furnished as a means of transportation, the accident did not arise out of and in the course of the claimant's employment within the meaning of the phrase as used in the Workmen's Compensation Act. In its determination of the cause, the court said, among other things:

''From the weight of authority, the rule would seem to be that the injury must have been sustained or death caused due to some act or condition connected with the doing of the work, or that the injury must have been sustained or death caused at or near the place at which the injured party was required to work by the terms of his employment, and in the doing of the things for which he was employed. The employment of the deceased was to cut down trees and saw them into logs. His place of employment was approximately one-half mile from where he was injured. The accident occurred during the noon hour, at which time deceased had left his place of employment and his employment.''

Compensation was denied. Givens, J., dissenting, wrote:

"The general rule is that an injury occurring to an employee going to or from his work does not arise out of his employment. Various exceptions, however, have been recognized, based upon different grounds— for instance, that the employee is on the master's premises immediately adjacent to the actual place of employment."

See, also, the interesting cases of *Watson v. Sherwood*, reported in 2 Butterworth's Workmen's Compensation Cases, p. 462, and *Warren v. Hedley's Colliery Co., Ltd.,* 6 Butterworth's Workmen's Compensation Cases, p. 140.

The defendant places great stress upon the case of *Wabnec v. Clemons Logging Co.,* 146 Wash. 469 (263 P. 592). In that case the only question was whether Wabnec was an employee of the logging company at a time when he sustained certain personal injuries arising out of the collision. Moreover, the only point on which this decision is an authority is one upon which we are all agreed, i. e., that, when construction is necessary, the Workmen's Compensation Act shall be liberally construed as provided by Or. L., § 6641. It was said at the argument of the cause under consideration that the Wabnec-Clemons case was the only case that was parallel with the cause at issue and its companion case. The situation presented in that case is in no way analogous to the present one. From an examination of the then Washington statute, it is apparent that the holding in the Wabnec case was based upon a statute essentially different from ours. This statement is authenticated by a perusal of the case of *Hama Hama Logging Co. v. Department of Labor and Industries of the State of Washington,* [288 P. 655] now pend-

ing in the Supreme Court of the State of Washington, where it is averred by one party and admitted by the other that, at the time of the decision of the Wabnec case, "as the law then stood an employee being on the premises of his master was entitled to recover, and at the time of his injury Wabnec was on the premises of his employer." Clearly, the Wabnec case is not a parallel case to either of the causes now before this court; in fact, we have found no parallel cases, nor have we been cited to any. It follows that each of these actions must be determined upon the facts peculiar to it.

In the case of *Brady v. Oregon Lbr. Co.,* supra, appears a comprehensive discussion of the question under consideration here. In the opinion rendered on a rehearing of that cause, 118 Or. 15 (245 P. 732, 45 A. L. R. 821), we quoted from the leading case of *Elliott v. Payne,* 293 Mo. 581 (239 S. W. 851, 23 L. R. A. 706), where the court, in an exhaustive treatise on the question as to whether an employee, in order to recover, is required to show that when injured he was about the business of his master, thus expressed its views:

"The cases (both Federal and state) all hold that the burden is upon the plaintiff to show that the servant was about the business of the master at the time of the injury. Without this pleading and proof there can be no recovery * * *.

"There may be incidental cessations from the work being done by the servant without the loss of a right to recover, if injury happens to the servant whilst upon the premises of the master, and through the negligence of the master. These cessations must be for purposes which are fairly within contemplation of the parties when the contract was made. Absence from the place of business for the servant's own individual purposes defeats his right of action. The

exception to this broad rule we find well worded in the case of *Ingram v. Rutland R. Co.*, 89 Vt. loc. cit. 281 (95 Atl. 545, Ann. Cas. 1918A 1191), whereat the general rule and the exceptions are stated, with a wealth of cases, in the following language:

" 'We are not unmindful of the general rule that puts a servant outside a recovery from his master, where he has, when injured, left his working place and gone elsewhere on some errand of his own. In such a case, the relation of master and servant is temporarily suspended and is not restored until the servant's return.' "

The case of *Guiliano v. O'Connell's Sons*, 105 Conn. 695 (136 Atl. 677, 56 A. L. R. 504), was a case where an employee was injured while on business of his own. In determining the issues there presented, the court said:

"The period of employment covers the working hours of the employee, and such reasonable time as is required to pass to and from the employer's premises in going to or from the work where the employer has, expressly or impliedly, by his knowledge and conduct or acquiescence, included within the term of employment the time in going to or from work. * * *

"Nor have we found case or authority which has held that an employee, who at his own option, after his day's work is ended, is upon his employer's premises, by the permission of the employer, is while there within the scope of his employment so that his employer would be held liable to pay him compensation for an injury then happening to him. An employee in such a voluntary situation could not be held to be engaged in the employment of his employer, or in that which was incidental thereto, without abandoning the definition of when an injury arises in the course of an employment which we adopted in *Larke v. John Hancock Mut. L. Ins. Co.*, 90 Conn. 303 (L. R. A. 1916E 584, 97 Atl. 320, 12 N. C. C. A. 308), and have ever since adhered to."

In 5 Am. & Eng. Ency. of Law (2d Ed.), pp. 516, 517, we find an interesting discussion on the subject of carriers of passengers wherein it is stated:

"One may be both a passenger and an employee of a railroad company; an employee when passing over the road at a time when actually engaged in performing duties for the company, but a passenger while not so engaged, but riding from one place to another, even though continuing all the while in a popular sense in the employment of the company."

In the case of *Vreeland v. Cogswell & Boulter Co.* appearing in 37 New Jersey Law Journal at page 57, one Alva Helen Vreeland was employed as a finisher on underwear, and just before the accident was engaged in sewing lace on the neck of slips with a sewing machine. Immediately prior to sustaining the injury, she left the machine at which she was working and crossed an aisle to speak to another employee, when her skirt caught in a revolving pulley. As a result of the accident she suffered both temporary and permanent disability. In determining upon the merits of the case the court said:

"If she left her machine and crossed the aisle to the place where she was injured in pursuance of her duties, she is entitled to recover; if she went for business of her own, or for her own pleasure, apart from the work upon which she was engaged for her employers, she is not entitled to recover."

A valuable case is *Brienen v. Wisconsin Public Service Co.,* 166 Wis. 24 (163 N. W. 182). In that case the question before us is discussed at length, and in the course of its exposition thereof the court said:

"True, the statute must be liberally construed in favor of including all service that can in any sense be said to reasonably come within it. But to include the acts of an employee when off duty and when attending

to business pertaining strictly to his own private affairs, * * * would be to enlarge the meaning of the statutory words beyond their reasonable import.''

In matter of *Daly v. Bates & Roberts,* 224 N. Y. 126, (120 N. E. 118), the claimant was employed as laundress in a hotel. During the evening, and after her regular working hours were over, she had the privilege of using the plant of her employer for the purpose of doing her personal laundry. On a certain evening after the day's work for her employer had been finished, while so engaged in doing her own laundry she sustained an injury to her wrist. In its disposition of the case the court said, in substance, that the plaintiff was employed to perform the laundry work for the hotel, and that this work was to be performed within established hours; that, on the day in question, she had completed her labors for her employer "some few hours before the happening of the accident,'' and that her duty to her employer did not require her presence in the laundry again until the following morning; that the accident occurred during the evening and while she was doing her own personal work; that she was not engaged in the performance of any duty she was employed to perform or which was connected with or incidental to the work of her employer, but that her labor at that time was entirely disassociated with the work of her employer, and the fact that she was allowed the use of the laundry for her own benefit "did not change the relation of the parties.''

In *De Muth v. Butler & Co.,* 210 App. Div. 505 (206 N. Y. S. 748), the claimant was an assistant gardner upon the premises of his employer, and his hours of work were from 7:30 a. m. to 5 p. m. every day except Sunday. He boarded and lodged in a boarding house upon the employer's premises, as did the plaintiff in the

instant case. On Sunday, September 2, 1923, after doing certain chores, he departed from the employer's premises to go to the city to get some clothes and visit a friend. After spending the day in New York, he took an evening train for the place of his employment. On reaching the station he undertook to walk to his boarding house, and, while traveling upon his employer's premises, he stepped into a hole and broke his leg. In a review of that case the court said:

"The claimant's trip to New York was taken exclusively to satisfy his own needs and desires. His return to the premises of his employer was a part of that trip,"

and held that the claimant was not injured in the course of his employment.

To similar effect see *Larke v. John Hancock Mut. L. Ins. Co.,* 90 Conn. 303 (97 Atl. 320, L. R. A. 1916E 584, 12 N. C. C. A. 308); *Roth v. Adirondack Co.,* 193 App. Div. 303 (183 N. Y. S. 717); *Brown v. Department of Labor & Industries,* 135 Wash. 327 (237 P. 733); *Michigan Cent. R. Co. v. Industrial Commission,* 290 Ill. 503 (125 N. E. 278).

Giving to the language of the Oregon Workmen's Compensation Act its plain, ordinary, everyday meaning, it is evident that the judgment recovered by this plaintiff is secure from reversal. But, after reading the voluminous opinion written by my learned associate, it is obvious to the writer that the judgment of plaintiff, a laborer, is about to be defeated by the process of liberal construction. An unusual position in the face of the statute. The act itself provides for its own construction. It says:

"Nothing in this act shall be construed to repeal, amend or limit any of the provisions of sections 6605 to 6639, inclusive, and all of its provisions shall be

liberally construed for the purpose of carrying out the intent of this statute *which is to provide additional compensation to injured workmen, their dependents and beneficiaries* \* \* \* '': Or. L., § 6641.

Shall the plain words of the statute be so enlarged by construction as to defeat a laboring man's judgment recovered in a court of law?

"Employer" and "workman," within the meaning of the act, are defined as follows:

"The term 'employer,' used in this act, shall be taken to mean any person \* \* \* that shall contract for and secure the right to direct and control the services of any person, and the term 'workman' shall be taken to mean any person \* \* \* who shall engage to furnish his \* \* \* services subject to the direction or control of an employer." Or. L., § 6619.

In order to annul the judgment recovered by plaintiff against defendant, his former employer, the language of the statute must be construed to say something that it has never said before. What is obvious is not subject to construction. The writer finds no authority in this act for changing or enlarging upon the definition of "workman," or the phrase "arising out of and in the course of his employment," by construction or otherwise. Yet it is proposed so to expand the terms of the act as to annul this judgment and send the litigant out of court without a dollar, thereby defeating the very purpose for which it was placed upon our statute books, i. e., "to provide additional compensation to injured workmen, their dependents and beneficiaries."

The defendant introduced testimony tending to show that the plaintiff was drunk and disorderly at the time he sustained his injuries. This, doubtless, to support defendant's plea that plaintiff was guilty of

contributory negligence. Accepting as true this testimony, adduced in support of the contention that plaintiff's negligence contributed to his injuries, in that while returning to the place of his employment he was drunk and disorderly, we ask: Was this condition brought about by an act of plaintiff while under the direction and control of defendant? Plaintiff's services as a logger only were subject to defendant's direction and control; and, for the reason that the venture on which he had embarked was a personal venture of his own, for his own benefit and enjoyment, the answer must be in the negative. The defendant seeks to place "on the job" a man who, according to the defendant's own testimony, was drunk and disorderly, and who, at the time of the accident, was 10 miles away from the orbit of his employment. From the record herein, the correctness of the plaintiff's testimony to the effect that from the time he left the logging camp to take a "lay-off" until his return he was his own boss and not under the direction or control of any person, cannot be disputed. In view of this record will this high court put its seal of approval upon the defendant's contention that plaintiff was rendering a service to it when indulging in the flowing bowl? Were this cause determined in accord with the plain meaning of the words of the law applicable thereto, free from enlargement by judicial construction, it would present no difficulty. This plaintiff swears that while on his journey to Portland and return he was performing no service for the defendant, nor was he under the direction or control of any person. He received no wages during his absence, nor did he contribute one penny to the industrial accident fund for insurance during that time. In full knowledge of these significant facts, this court has no authority in

law to say that when the plaintiff was thrown from the speeder he was serving his employer, or even that he was furthering his employer's interests. The fact that he was injured on the defendant's premises does not determine the cause, nor does the further fact that he had been a workman for defendant place him under the Workmen's Compensation Act at the time of the accident. The record abundantly shows that the accidental injury did not "arise out of and in the course of his employment" as a logger.

I know of no better way of concluding this opinion than to quote the following from our former opinion in this cause:

"The decision of the trial court in this case is fair and just. This court has no right, by construction or implication, to stretch, enlarge or torture the meaning of the words and phrases embodied in the Oregon Workmen's Compensation Law. If this statute shall be enlarged so as to take into its protective embrace those persons who are not employed at the time of sustaining injury, it must be done by legislation, and not by the judiciary."

Our constitution forbids the performance of legislative functions by the judiciary. Let us keep within the bounds of our fundamental law.

This case should be affirmed. It follows that the former opinion rendered herein should stand.

Coshow, C. J., and Bean, J., concur in this dissent.

Second petition for rehearing denied September 9, 1930

On Petition for Rehearing
(290 P. 751)

[Based upon the written opinion denying the petition for rehearing in the companion case of *Lamm v.*

*Silver Falls Timber Company,* an oral order issued denying the petition in the instant case. To the oral order denying the petition for rehearing Mr. Justice BROWN dissents in the following language.]

BROWN, J. (dissenting). Based upon the alleged negligence of the defendant corporation in the operation of a speeder upon which plaintiff was·riding as a passenger, he obtained a judgment for $9,000 against the defendant in a common-law action. For a statement of the facts and the law applicable thereto, see the original opinion, wherein we sustained the judgment of the lower court. Thereafter, the defendant filed a motion for rehearing, which was granted, and our former opinion was reversed, four of the justices voting for reversal and three for adherence to the original opinion. The plaintiff now asks for a rehearing.

We have stated the facts fully in our original opinion and in the opinion dissenting from a reversal thereof, and a repetition thereof we deem unnecessary. They are very similar to those in *Lamm v. Silver Falls Timber Co.,* a companion case heard and decided simultaneously with the case now under consideration, and the law which governs in the disposition of the Lamm case is alike applicable to this. Varrelman was a logger, and, as in the case of Lamm, he was away from the place of his employment at the time he sustained the personal injuries forming the basis of this litigation. He was not "on the job" when injured, but was pursuing his own pleasure, without any direction from his employer.

For its perspicuity and well-defined meaning, we again quote the following established principle of law:

"To bring his case within the Compensation Act, the employee must show, as he was required to estab-

lish under the common law, that he was at the time of the injury engaged in the employer's business, or in furthering that business, and was not doing something for his own benefit or accommodation'': 28 R. C. L., p. 804, § 92.

The plaintiff herein possessed his common-law remedy for damages, which he pursued, and this remedy should not be denied him. As a result of the trial, he was awarded a judgment for $9,000. In view of the character of the injuries, and the circumstances existing at the time such injuries were sustained, this judgment may seem large. Be that as it may, this court is not authorized to amend the statute by interpretation or construction. Likewise, upon the record before us in the companion case of *Lamm v. Silver Falls Timber Co.*, supra, the judgment for $25,000 therein rendered should be undisturbed. However, the recovery of these judgments and their annulment by reversals bears evidence that ''there is virtue and truth in the maxim that 'Hard cases are the quicksands of the law' '': 29 C. J., 213, note 69.

The petition for rehearing in this cause should be granted.

Coshow, C. J., and Bean, J., concur in this dissent.