Argued at Pendleton November 2; affirmed December 13, 1932

# FINLEY *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(16 P. (2d) 648)

*R. J. Kitchen,* of La Grande, for appellant.

*Miles H. McKey,* Assistant Attorney General (Victor R. Griggs, Assistant Attorney General, on the brief), for respondent.

KELLY, J. Plaintiff's late husband, Mr. H. E. Finley, was employed as a member of an oiling crew working for the State Highway Commission. For ten days or two weeks prior to May 23, 1931, the members of the crew had their headquarters at Huntington where they stayed at night. The oiling was being done at a place about 21 miles west of Huntington, and some distance east of Durkee. It was the custom of the State Highway Commission each day to transport the members of this crew from Huntington to their work and from their work to Huntington.

At noon of Saturday, May 23, 1931, plaintiff's husband, Roscoe Furman, and Jack Miller, each being a member of said crew, had arranged to go in Finley's car to La Grande at the completion of the day's work. When Finley's day's work was finished, however, Furman was oiling a truck at a place several miles east of Durkee, and Finley and Miller and Mr. Fred Bowery went in Finley's car toward Huntington. It is claimed by plaintiff that the superintendent of the oiling crew, Mr. Roland Hopper, directed Finley to pick a Mr. Ray Scarborough up and take him home. Mr. Hopper expressly denies giving any such direction. Mr. Scarborough was operating a blader at a place about 20 or 21 miles east of Durkee and about seven miles west of Huntington, and was not through with his work when Finley, Miller and Bowery reached him. Mr. Bowery was on his way to Idaho. After learning that Scarborough was not ready to leave his work, the three members of the crew, Finley, Miller and Bowery

went to Huntington in Finley's car. While there, Finley interviewed the timekeeper, Mr. Clinton Holman, about the pay checks of the crew. After remaining in Huntington 10 or 15 minutes, Finley and Miller left Huntington in Finley's car, and returned to the place where Scarborough had been working. There, Scarborough joined them, and, after picking Furman up, the four members of the crew, Finley, Furman, Miller and Scarborough rode in Finley's car to a place about 12 miles west of Durkee, where they stopped to replace or repair a flat tire. While so engaged, a hit-and-run driver came along in an automobile and collided with them injuring Finley in such a manner that he died as a result thereof.

The only question in the case is whether it has been shown that the injury, which Finley thus sustained, was one arising out of and in the course of his employment.

There are but two grounds upon which it could be held that the fatal injury, sustained by Mr. Finley, was one arising out of and in the course of his employment.

The first ground is that at the time of the injury he was passing from his work by a way over his employer's premises. The second ground is that at the time of the injury he was acting under the direction of the superintendent of the crew of workmen with whom Mr. Finley was working.

As to the first, we think that the accident occurred at a place too remote from the zone of Mr. Finley's work to render said ground tenable. The term "premises" does not include all the property owned by the master, but only so much thereof as is necessary for the conduct of the business or undertaking in which the master is engaged.

There is nothing in the record to indicate that any part of the highway west of Durkee was necessary for the conduct of the work in which plaintiff's decedent was engaged. Witness Miller testified that the work was confined to the district between Durkee and Huntington. The accident occurred 12 miles west of Durkee.

■ As to the second, the basis for it consists of hearsay testimony introduced by defendant as part of a written statement contradicting the testimony of one of plaintiff's witnesses. If a retrial were to be had, undoubtedly, this hearsay testimony would be treated as such by limiting the effect of said writing, at the time of its being offered, to purposes of impeachment only. Moreover, giving it full value, it shows merely that the superintendent told plaintiff's decedent to pick Scarborough up and take him home. This was a course not embraced in the work plaintiff's decedent was doing, which was that of swamper in covering the oiling then being done on that part of the highway in the vicinity of Durkee. If regarded as a task at all, it was one which plaintiff's decedent carried out without any control over him on the part of said superintendent or any other agent of the highway commission. Manifestly, it was an order beyond the authority of the superintendent to enforce and could not be deemed of sufficient potency to render applicable the terms of the statute awarding compensation to workmen.

*Zurich General Accident & Liability Ins. Co. v. Brunson,* 15 Fed. (2d) 906, cited by plaintiff, is a case wherein the plaintiff was working on the side of a precipitous mountain felling snags and clearing the land preparatory to it being burned over. While eating his lunch at the place of his work above a fire set by himself and his fellow workman, plaintiff cut a

small twig or bush, which was in the way, and while so doing accidentally cut his leg. In attempting to replace his boot, which he had removed in order to examine the wound, he lost his balance and fell or rolled into the fire below sustaining very serious injury. The Circuit Court of Appeals said:

"There was no intervening relation or act to interrupt the continuity of conduct of the appellee in his engagement in felling snags and clearing the land. Cutting the shrub or twig with a jackknife was an act in harmony with and in the course of employment, in a very small way. There was no interrupting cause or exposure to new danger, no risk or danger from other agencies."

The distinction between that case and the one at bar is obvious. Here, when injured, plaintiff was engaged in an entirely different kind of work from that which he was employed to do. He was exposed to new dangers.

*Varrelman v. Flora Logging Co.,* 133 Or. 541 (277 P. 97, 286 P. 541, 290 P. 751), also cited by plaintiff, applied the rule that where transportation of an employee to and from his work is given as an incident of his employment, if the employee is injured while being so transported, such injury arises out of and in the course of his employment.

The same rule of law is announced in *E. Clemens Horst Co. v. Hartford Accident & Indemnity Co.,* 27 Fed. (2d) 42, and in *Donovan's Case,* 217 Mass. 76 (104 N. E. 431, Ann. Cas. 1915C, 778).

There is nothing in the record of the instant case indicating that transportation by defendant of plaintiff's decedent west of Durkee was within the contemplation of the parties at any time; in fact, such a pur-

pose is expressly refuted. As far as the record speaks, the only transportation contemplated was between the place of work and Huntington.

*Friebel v. Chicago City Ry. Co.*, 280 Ill. 76 (117 N. E. 467), also cited by plaintiff, is a case wherein plaintiff was employed to load trucks with furniture from the platform of his employer's warehouse and make deliveries of said furniture. Having made his final delivery, plaintiff was returning home, there still being a few pieces of furniture on the truck, when the steering gear of the truck became disarranged, and, as plaintiff was assisting the chauffeur and another helper to remove the truck from a street car track to avoid stopping the street car approaching upon said track, a rear-end collision occurred and plaintiff was injured. It was held that this injury arose out of and in the course of plaintiff's employment. We quote:

"The injury occurred to appellant while he was in the service of his employer, although his work for the day had terminated and he had made his last delivery of goods. He was on his return from his last trip of the day, and although his hours of employment for that day had expired, he was at the very moment his injury occurred engaged in work for his employer necessitated by his employment."

This clearly distinguishes the case cited from the case at bar.

*Geary v. Ginzler and Co., Ltd.*, 108 L. T. N. S. 286, (1913) W. C. & Ins. Rep. 314, also cited by plaintiff, appears to be a border line case; that is to say, one which caused the learned jurists, who determined the case on appeal, to express their hesitation and reluctance in deciding it as they did. In that case the applicant was a young woman engaged to work a machine

for cutting tin. That machine became blocked and applicant notified one Brown, an engineer, whose duty it was to keep such machines in going condition. Brown said: "I cannot leave yet; you must see to it yourself." Applicant returned to the machine and while she was engaged in clearing the machine another girl named Webster came up and there was a conversation. The applicant told the other girl what applicant was doing and the other girl put her foot on the treadle which set the machine going and the accident happened. It was contended that Brown had no authority to enlarge the scope of the employment by giving directions to the applicant. The court remarks:

"But there is evidence that although the employers were told that Brown had ordered the applicant to attend to the machine herself, yet they kept him on in their employment for two or three months longer."

This appears to have been considered as some evidence of Brown's authority to give the order in obedience to which applicant suffered the injury in question.

In at least two respects, the Geary-Ginzler case differs from the case at bar. First, the work in which applicant in the Geary-Ginzler case was engaged when hurt was upon the very machine she had been employed to operate, and, second, there is some evidence in the record that the one, who ordered her to return and "see to it herself," had authority to give such an order. In the case at bar, there is nothing in the record to indicate that Finley's superintendent had any authority to order Finley to transport Scarborough to La Grande in Finley's automobile. Such transportation was entirely different and distinct from the kind of work Finley was employed to do.

*In re Raynes,* 66 Ind. App. 321 (118 N. E. 387);
*Decatur Ry. Co. v. Industrial Board,* 276 Ill. 472 (114
N. E. 915), and *Barragar v. Ind. Com. of Wis.* 205 Wis.
550 (238 N. W. 368, 78 A. L. R. 679), are cases where the
order, upon which the employee was acting when in-
jured, was given by a person authorized to give such
an order.

*State ex rel. v. District,* 141 Minn. 61 (169 N. W.
274), holds that the employee's home was a proper and
fixed place for communicating with his employers and
the fact that it was in North Dakota, while his em-
ployer's business office was in Minnesota, did not
prevent employee's recovery under the compensation
act of Minnesota for an injury sustained when said
employee was returning home from a trip in his em-
ployer's interest, his employment being that of a
traveling solicitor of grain shipments for sale on com-
mission. In the instant case, Huntington had been
established as the headquarters for Finley and his
fellow workers, and not La Grande.

The case of *Marks' Dependents v. Gray,* 251 N. Y.
90 (167 N. E. 181), cited by both parties, announces
the rule that in determining whether the risks of travel
are also the risks of the employment, the decisive test
must be whether it is the employment or something
else that has sent the traveler forth upon the journey
or brought exposure to its perils. Bearing in mind that
Finley's employment was that of swamper on the high-
way with an arrangement whereby he and his fellow
workmen were transported from Huntington to their
work at or near Durkee, and from their work to Hunt-
ington, it is obvious that on a trip to La Grande, while
at a point twelve miles west of Durkee, the risks of
travel were no part of Finley's employment.

■ No one can be unmindful of the great loss plaintiff has suffered and we claim no credit because, in common with all others aware of it, we deeply and sincerely deplore and regret it; but, unpleasant though it is, in this particular case, to deprive plaintiff of compensation, we cannot extend protection afforded by the Workmen's Compensation Act to the family of one whose fatal injury was sustained at least twelve miles from the place of his employment, while at most he was taking a fellow workman to La Grande where both of them resided, as the result of an unauthorized request by a superintendent of a job of oiling the highway when the record definitely discloses that there was no implied or express arrangement or agreement for transportation of deceased or his fellow workmen to any point west of Durkee.

It was suggested by counsel for plaintiff on argument that the entire highway comprised the premises of defendant and, inasmuch as the injury was sustained on the highway, it occurred on the premises of the employer while the employee was returning home from his work. To so hold, would impose a liability in every case where an employee of the highway commission might be injured in going from his home to work or returning home at any point on an Oregon state highway no matter how remotely distant the place of such casualty might be from the place of employee's work. We cannot assent to such a rule.

For the reasons stated, the judgment of the circuit court should be affirmed, and it is so ordered.

RAND and ROSSMAN, JJ., concur.

BEAN, C. J., dissents.