Argued October 4; affirmed October 25, 1938

# HOPKINS *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

(83 P. (2d) 487)

*George P. Winslow,* of Tillamook, for appellant.

*Oliver Crowther,* Assistant Attorney-General (I. H. Van Winkle, Attorney-General, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the plaintiff, who is the widow of Herman N. Hopkins, deceased,

from a judgment of the circuit court entered in favor of the defendant after a demurrer had been sustained to the complaint and the plaintiff had declined to plead further.

The complaint alleges: March 18, 1935, Herman N. Hopkins was in the employ of Tillamook County "upon SERA projects." SERA projects "were sponsored, planned and designated by Tillamook County and paid for by the state and federal governments chiefly for the purpose to provide work and employment for all qualified residents of said Tillamook County who were heads of family, out of employment and in need of and entitled to financial assistance and public relief." The work performed by Hopkins and his co-laborers consisted of "clearing road right-of-ways, building roads, dikes and other like projects." These projects were scattered about the county and each required only a short time to complete. When one project was completed the men were assigned to another. This circumstance presented to the men the problem of traveling from their homes to their places of employment. "It was the general practice during all the times herein mentioned for said county to furnish with said employment transportation from Tillamook City, the center of population, to said work along a route that would accommodate the most workmen so that no workman would be required to walk or travel an unreasonable distance; that it was also the general practice during all the times herein mentioned that whenever workmen who did not live along or near the route traveled by said county truck to and from said project and were assigned to work upon said project, that such workman would be required by his employer to obtain his own transportation or travel to and from said project in the best manner that he could, and when walking

the entire distance to and from work night and morning was too great, that such workman would solicit and obtain rides with some traveler upon a public highway. * * * All of said work was relief work, and the wages paid by said employer and received by said employees were not sufficient to enable an employee to furnish his own transportation, and it was impractical for any workman who had been assigned to any such project and who could not use the transportation furnished by said county to arrange or provide any ordinary or economical means to travel to and from said·project." March 18, 1935, Hopkins was assigned to a "project which was also a long distance from the home of said deceased and said deceased was unable to use the transportation furnished by said county." To reach this project and return to his home it was necessary for him to travel along the public highways, and "there was no public or other conveyance operated or maintained whereby said deceased could have secured transportation to and from said projects." Hopkins and his co-laborers "were paid for time up to 4:30 p. m." March 18, "shortly after 4:00 p. m., the workmen upon said project, namely, the * * * knocked off work and all of said workmen, except the deceased and one other, were transported from said project by said county truck to or near their respective homes." Hopkins, who lived in the opposite direction from the route pursued by the truck, "was permitted to leave said work a few minutes before the regular quitting time" and proceeded home along the "main and heavily traveled state highway * * * and while so pro-. ceeding upon said route directly towards his home and while on said public highway and before said deceased had reached his home at or about 4:25 p. m., said deceased was hit by an automobile," receiving injuries

from which he later died. Tillamook County at that time was operating under the Workmen's Compensation Act and both the county and Hopkins were contributors to the state industrial accident fund. The complaint does not state in numbers of miles the distance from Hopkins' home to the project upon which he was working on the fatal day. It merely states that it was "a long distance." Nor does the complaint disclose whether Hopkins was walking or riding at the time of his fatal injury. The Industrial Accident Commission rejected the plaintiff's claim for compensation "solely because of the finding of said commission that the fatal injury to the said Herman N. Hopkins did not arise out of and in the course of his employment."

The above is a review of the portions of the complaint which are material to the issues before us. The defendant's demurrer, predicated upon a contention that the complaint did not state a cause of action, was sustained by the circuit court. The plaintiff declined to plead further, resulting in an order dismissing the complaint. The sole issue before us is whether the above facts disclose that Hopkins' fatal injury was received "by accident arising out of and in the course of his employment." (§ 49-1814, Oregon Code 1930).

In support of her contentions, the plaintiff cites: *Lamm v. Silver Falls Timber Co.*, 133 Or. 468 (277 P. 91, 286 P. 527, 291 P. 375); *Cudahy Packing Co. v. Parramore*, 263 U. S. 418 (68 L. Ed. 366, 44 S. Ct. 153, 30 A. L. R. 532); *Voehl v. Indemnity Insurance Co.*, 288 U. S. 162 (77 L. Ed. 676, 53 S. Ct. 380, 87 A. L. R. 245); *MacClelland v. Dodge Bros.*, 233 App. Div. 504 (253 N. Y. S. 773); *Cymbor v. Binder Coal Co.*, 285 Pa. 440 (132 Atl. 363); *Ohmen v. Adams Bros.*, 109 Conn. 378 (146 Atl. 825); *Reisinger v. Perry*, 165 Md. 191 (167 Atl. 51); *Kuehmichel v. Western Union Telegraph Co.*,

125 Min. 74 (145 N. W. 788, L. R. A. 1918D, 355); *Finley v. State Ind. Acc. Comm.*, 141 Or. 138 (16 P. (2d) 648); *Corvi v. Stiles & Reynolds Brick Co.*, 103 Conn. 449 (130 Atl. 674); *Industrial Comm. of Ohio v. Henry*, 124 Ohio St. 616 (180 N. E. 194).

We shall now undertake a brief review of the aforementioned decisions. In *Lamm v. Silver Falls Timber Co.*, supra, Lamm, a logger, was injured while returning from his home to his place of employment upon his employer's logging train. In *Varrelman v. Flora Logging Co.*, 133 Or. 541 (277 P. 97, 286 P. 541, 290 P. 751), a companion case to the Lamm case, Varrelman was injured while returning to the logging camp upon his employer's speeder. A logging railroad, as pointed out in those two decisions, subjects those riding upon it to many hazards; yet the logging railroad is virtually the only means whereby the logger can leave the scene of his labors and go to his home, to the city, etc. Transportation upon the logging railroads in both of the aforementioned cases was given to the loggers as an incident of their employment. In both cases the accidents occurred upon the premises of the employer and while the employee was using an instrumentality under the control of the employer. It was the injured man's status as an employee which subjected him to the dangers of the logging railroad. Those employed in the woods are virtually the only ones who have occasion to use the logging railroad. Members of the general public rarely use it. In both cases the employers were defended by the Industrial Accident Commission which insisted that the injuries were due to accidents "arising out of and in the course of" the employment, and that, therefore, the plaintiffs should have sought compensation from the fund, and not redress from the employers. These circumstances persuaded us that

Lamm's and Varrelman's injuries arose out of and in the course of their employment.

In *Cudahy Packing Co. v. Parramore,* supra (certiorari to Supreme Court of Utah), the defendant's plant was located a half mile from a main highway with which it was connected by a public road. The latter, near the plant, was crossed by three lines of railroad, one of which connected directly with and served the plant. This road was the only practical way of ingress and egress for the employees and was customarily used by them. The deceased, an employee, was fatally injured seven minutes before working time by a train operated upon the track which served the plant. The Utah Industrial Commission construed the act as including this accident. This result was affirmed by the Supreme Court of Utah. Under these circumstances, the federal Supreme Court held that it was bound by the construction and application just mentioned of the statute, and that there was left for determination only the question whether the act as thus construed and applied was in conflict with the fourteenth amendment. In sustaining the validity of the act as thus construed, the court declared that if an accident for which relief is sought "is in no manner related to the employment, an attempt to make the employer liable would be so clearly unreasonable and arbitrary as to subject it to the ban of the Constitution," but that if a causal connection existed between the injury and the business in which the workman was employed, the statute cannot be deemed invalid. The decision defined the degree of causal connection as "a connection substantially contributory, though it need not be the sole or proximate cause." It found that such a causal connection existed between the injury and the business of the employer. It pointed out that "the employment contemplated his

entry upon and departure from the premises as much as it contemplated his working there. * * * Parramore could not at the point of the accident select his way. He had no other choice than to go upon the railway tracks in order to get to his work.'' It mentioned particularly the fact that the track upon which he was killed was not only adjacent to the plant but was connected with it ''and in principle it was as though upon the actual premises of the employer.''

In *Voehl v. Indemnity Insurance Co.*, supra, Voehl, a trusted employee, was head of one of the company's divisions, and was charged with the duty of keeping the company's buildings and stock in proper order. According to the company's manager, Voehl was ''on duty all of the time on our call; that is to say, he was a very willing employee and we kept him purposely for taking care of emergencies and so that all details were cleaned up promptly.'' The company maintained a 24-hour service which subjected Voehl to many calls during non-office hours. For such services he was paid a mileage rate of five cents a mile for the use of his car and seventy-five cents an hour from the time he left his home until his return. He was injured on a Sunday in an automobile accident while on his way to his employer's place of business. The issue whether Voehl was entitled to compensation was governed by the provisions of a federal compensation act. An administrative officer, acting pursuant to its provisions, had entered findings that Voehl was injured while on his way to his employer's warehouse in performance of his duty, and that under the terms of his employment the period of his service commenced when he left his home. He concluded that Voehl was entitled to compensation for the injury. In the decision aforemen-

tioned the court declared: "We think that these findings were supported by the proof." It then stated:

"The general rule is that injuries sustained by employees when going to or returning from their regular place of employment are not deemed to arise out of and in the course of the employment. Ordinarily, the hazards they encounter in such journeys are not incidental to the employer's business."

But it sustained recovery in the instant case for the following reasons:

"While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return."

The report of this decision in 87 A. L. R., is followed with an annotation, at page 250, from which we quote:

"It is a general though not invariable rule, so common as to require no citation of authority, that an injury sustained in going to or from work does not arise out of and in the course of the employment within the meaning of workmen's compensation acts."

The annotator then takes note of the following exception:

"Where the employee's compensation covers the time involved in going to or from his work, or an allowance is made for the cost of transportation."

He follows this statement with a review of several decisions.

*MacClelland v. Dodge Bros.*, supra, is an illustration of the application of the exception just noted. MacClelland lived 22 miles from the place of his em-

ployment and traveled back and forth on a motorcycle. Ten miles from his home, and twelve miles from his place of employment, was Coyne's Corner. Under an express understanding with his employer, his employment began when he reached Coyne's Corner and terminated at the close of day when he again reached that place on his way home. In addition to his wages being calculated upon that basis, he was also paid five cents a mile towards the expense of operation of his motorcycle. The court, in stating these facts, attributed this peculiar arrangement to the rules of the labor union of which MacClelland was a member, which required that its members should travel not more than ten miles to and from their employment on their own time and at their own expense. MacClelland was injured while returning home, but before he had reached Coyne's Corner. The court held that he was entitled to compensation under the New York workmen's compensation law.

*Cymbor v. Binder Coal Co.*, supra, is another illustration of the application of that exception. Stanley Cymbor was employed by the Binder Coal Company. At the close of day the mine's pumps were stopped. Cymbor's duties required him to start the pumps during the night so that the mine would be free from water the next morning. For this service he received extra compensation. He lived 1200 feet from the mine, and in going there to start the pumps walked along a railway track. At the time of his fatal injury he was returning to his home along the tracks after he had started the pumps. In allowing compensation, the court employed the above exception, adding that an injury is compensable "if at the time, although off the premises, the employee is actually engaged in furthering the employer's business."

In *Ohmen v. Adams Bros.*, supra, the plaintiff, like the other carpenters in the defendants' employ had no fixed place of employment, going wherever directed. He traveled to his jobs by automobile, and his wages began at 8:00 a. m., whether he had reached the job or not. Upon the occasion in question the defendants had permitted him to go to the polls to vote; nevertheless, on that day, as on others, his pay commenced at 8:00 a. m. After casting his ballot he proceeded by automobile to his place of employment, and at 9:20 a. m., along the route to his work, sustained an injury. The court declared that generally compensation is denied to "an employee injured upon a public highway while going to and from work to a fixed place of employment," but recognized an exception "where the employee is using the highway in doing something incidental to his employment, with the knowledge and approval of the employer." In holding that the facts brought the injured workman within that exception, the court pointed out that if the injury to the plaintiff had occurred, not while he was approaching the place of his employment but while on his way to the polls, compensation would not have been recoverable.

In *Reisinger v. Perry*, the injured workman had been for many years in the employ of the defendant, charged with responsibility for the care of its building. His regular hours of employment extended from 6:00 a. m. to 6:00 p. m., but in addition he was subject to call at any time. On the occasion in question he was called to the building about midnight, and after performing some duties there, started for his home. On the way he was struck by an automobile. In holding that compensation was recoverable, the court after recognizing the general rule which denies compensation

in such instances, stated that relief may be awarded "if the agreement of employment is made to cover the time of his going to and returning from his place of work."

In *Kuehmichel v. Western Union Telegraph Co.*, supra, one Geminder was a messenger in the defendant's employ, whose hours of employment included the period of 7:00 to 8:00 p. m. On the day of the accident his superior permitted him to remain at home, provided he would come to the company's office if requested. At 7:15 p. m., he was summoned to the office and while on his way there collided with and injured the plaintiff. The sole issue before the court was whether the defendant was liable for Geminder's negligence, which issue was not concerned with any provision of any workmen's compensation act. In resolving this issue in favor of the plaintiff, the court declared:

"In this case Geminder was acting under orders from his superior and during the period covered by his wages of employment. * * * He was not on any business of his own. He was not his own master. He was serving his employer. * * *"

The facts in *Finley v. State Industrial Accident Commission*, supra, were the following: Finley, an employee of the State Highway Commission, was a member of a crew working on the highway at a point east of Durkee. On a Saturday afternoon after work had ceased he drove to a point east of Huntington, where he was joined by one Scarborough and two other workmen and started for La Grande where both he and Scarborough lived. After reaching a point twelve miles west of Durkee, where they stopped to make a repair, Finley was fatally injured by another car. Some of the evidence indicated that Finley's superior had directed him to take Scarborough to La Grande. Com-

pensation was sought upon two bases: (1) that Finley suffered his injury while passing from his work "by a way over his employer's premises;" and (2) that he sustained his injury while acting under the direction of his superior. In rejecting the first contention, the decision, written by Mr. Justice KELLY, stated that the accident occurred at a place too remote from the scene of Finley's labors. It pointed out that the term "premises" "does not include all the property owned by the master, but only so much thereof as is necessary for the conduct of the business or undertaking in which the master is engaged. There is nothing in the record to indicate that any part of the highway west of Durkee was necessary for the conduct of the work in which plaintiff's decedent was engaged." In rejecting the second contention, the decision pointed out that Finley's duties did not include the transportation of any of the workmen, and that his superior had no authority to direct him to transport Scarborough to La Grande. It declared: "It is obvious that on a trip to La Grande, while at a point twelve miles west of Durkee, the risks of travel were no part of Finley's employment."

In *Corvi v. Stiles & Reynolds Brick Co.*, supra, many of the employees of the defendant, of whom the decedent up to the time of his death was one, walked from their homes to the defendant's plant over a path which led them across a railway track. The compensation commissioner found "the employer contemplated that certain of its employees living west of the tracks would use this route in going to and from work. The decedent had reason to believe, and did believe, that the employer intended him to use this path." The fatal injury occurred at a point where the path crossed the tracks. The commissioner granted compensation. In sustaining the award, the court on appeal commented that this

path shortened the route and "added from five to seven minutes to the dinner hour of the employees, and thereby added to their comfort and diminished the likelihood of their being tardy at the plant and so benefited the employer." It held:

"In view of these facts, the conclusion of the commissioner that the using of this path as a way of approach to the plant by employees living west of the tracks was a risk annexed by the conduct of the parties as an incident to the employment, and hence that the injuries causing the death of the decedent arose out of and in the course of the decedent's employment were conclusions legally and logically drawn from the subordinate facts."

Compensation in *Industrial Commission of Ohio v. Henry,* supra, was sought on behalf of the widow of Harry Henry who up to the time of his death had been an employee of the Purity Ice Cream & Dairy Company. He customarily reached that company's plant at 2:00 a. m. His first duty, after reaching the plant, was to hand to the shipping clerk a card showing the quantity of milk required by his customers for that day. He then fed his horses. Next, like the other employees, he crossed some railway tracks on his way to a restaurant where he ate his breakfast. Upon the occasion in question he was struck by a train while crossing the tracks after having partaken of his breakfast. The compensation commission held that these circumstances did not entitle his widow to compensation. The court, in the decision under review, took the opposite view. It pointed out that Henry had followed the prevailing custom as he pursued the above course, and that his employer contemplated that he should do so. It declared:

"Under this record, the deceased at the time of the accident had already entered upon his employment, and was traveling the most direct route to perform the next

necessary act in the course of such employment. * * * Henry was obliged regularly and continuously to cross these tracks, and hence was subjected to a degree of exposure to the common risk beyond that to which the general public was subjected. * * * We think that the hazard of this track immediately adjacent to the plant constituted a hazard of the employment for men who as an incident to their work, after their work had begun, customarily with the consent of their employer went across the tracks to get their breakfast in the early morning hours, and that the trial court did not err, either in its charge, or in refusing to give the charge requested on behalf of the commission."

The above constitutes a summary of all of the authorities cited by the plaintiff. In *Lamm v. Silver Falls Timber Company*, supra, we endeavored to deduce from the authorities therein reviewed the rules which they employed, and summarized them as follows: (1) an employee, injured while being conveyed to or from his work in a conveyance furnished by his employer and as an incident of his contract of employment, is generally deemed entitled to compensation; (2) an employee injured upon a road or way, either public or private, which leads to the place of employment and which his employer contemplated he should use, is entitled to compensation, provided he was exposed to the hazards of the passageway in a greater degree than the common public; and (3) an employee injured upon the premises of his employer by an instrumentality for which his employer is not responsible is entitled to compensation if there was a causal connection between the business in which he was engaged and the injury-inflicting instrumentality. In making that summary we were careful to state, "It is difficult to formulate precise rules which will govern all cases."

In the present instance, work had stopped for the day. Wages, it is true, were calculated upon the basis

of work continuing until 4:30 p. m., and it is likewise true that that hour had not been reached when Hopkins was permitted to start for home, nor when his injury was sustained; nevertheless, work had actually ceased. When Hopkins was told that he could go home he was no longer under any duty to obey his employer's commands. His employer had waived his right to demand more labor. For that day, at least, the hours of labor had been shortened. Since Hopkins' wages did not cover the period intervening between the hour when he left home and when he returned, we must assume, as just indicated, that he was dismissed before regular quitting time, either because his foreman had no more work for him to do or because the foreman realized that Hopkins had a long way to go. Whatever may be the explanation, work had ceased and the hour had been reached when Hopkins was at liberty to do as he pleased. At the time of his fatal injury he was going home. He was not in any vehicle furnished by his employer. He was not upon premises that constituted a part of the project where he worked. He was beyond the orbit of his employment hazards. And, finally, the demands of his employment did not expose him to the dangers of the public road in any greater degree than any other traveler.

Comparing the facts before us with those in the decisions above reviewed, we find Hopkins was not in a conveyance operated by his employer and in which he was entitled to ride as an incident of his employment, as in the Lamm and Varrelman cases; he was not upon premises which formed a part of the plant of his employer as in those cases; nor was he upon a road or passageway leading to the plant, crossed by railway tracks and constituting in principle an extension of the plant, as in the Parramore, Cymbor and Henry cases;

his wages did not cover the period of time in which he was traveling upon the highway, as in the MacClelland, Cymbor, Ohmen and Voehl cases; he was not on duty all of the time, subject to emergency calls, and returning from one of them, as in the Cymbor, Voehl and Reisinger cases; nor was he injured within the hours of his employment, as in the Henry case, or during the period of his employment and while responding to a call of his employer, as in the Kuehmichel case.

██ We can observe no substantial causal connection between the business of his employer and the injury which unfortunately befell Hopkins. The mere fact that he was returning home at the conclusion of his day's labors does not supply a substantial causal connection. The injury might have happened had he been upon the road at that time for any other purpose. In none of the above cases was it sufficient that the employee be going to or from work. That alone was not deemed a sufficient causal connection; something more was demanded. We are compelled to revert to the general rule which denies compensation when the only circumstance present is the fact that the workman was going to or returning from his place of employment. We know of no facts in the instant case capable of bringing Hopkins' situation within any exception to that rule. We believe that the facts brought before us in *Finley v. State Industrial Accident Commission,* supra, were not substantially unlike the facts now before us.

It follows that the judgment of the circuit court must be affirmed.

BEAN, C. J., and KELLY and BELT, JJ., concur.