Argued February 5, reversed March 28, 1963

# PHILPOTT *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

379 P. 2d 1010

*Thomas C. Enright*, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General and Ray H. Lafky, Assistant Attorney General.

*C. S. Emmons*, Albany, argued the cause for respondent. On the brief were Willis, Kyle & Emmons.

Before McAllister, Chief Justice, and Perry, O'Connell, Goodwin and Lusk, Justices.

LUSK, J.

This is an appeal by the defendant, State Industrial Accident Commission, from a judgment of the circuit court sitting without a jury, which reversed an order of the commission disallowing plaintiff's claim for compensation for an accidental injury.

Plaintiff, Thomas J. Philpott, the owner and operator of a log truck, entered into an agreement with

Schneider Lumber Company to haul logs for the latter from the woods to its mill near Brownsville, Linn County, Oregon. When not in use, the plaintiff kept his truck at his home. Early in the morning of August 17, 1960, plaintiff got into the cab of his truck, which was parked at his home, and started the motor preparatory to driving to the job site, when he discovered that he had forgotten his lunch, which he customarily took with him. He jumped to the ground, intending to return to his house and get his lunch, but landed in such a manner as to injure his right knee.

Both the plaintiff and Schneider Lumber Company were subject to the Workmen's Compensation Act. Plaintiff filed his claim for compensation with the defendant, which rejected it, and plaintiff appealed to the circuit court. It is conceded that the injury plaintiff sustained was accidental and that he would have been covered under the Workmen's Compensation Act if he had been hauling logs for Schneider Lumber Company at the time that he was injured. But the defendant contends that the accident was not one "arising out of and in the course of his employment" as it must have been in order to entitle the plaintiff to recover benefits from the Industrial Accident Fund, ORS 656.152.[1] This is the only question for determination.

The facts relating to plaintiff's employment are free from dispute in all essential particulars. He was

[1] ORS 656.152 (1) Every workman subject to ORS 656.002 to 656.590 while employed by an employer subject to ORS 656.002 to 656.590 who, while so employed, sustains an accidental injury, or accidental injury to prosthetic appliances arising out of and in the course of his employment and resulting in his disability, or the beneficiaries of such workman, if the injury results in death, are entitled to receive from the Industrial Accident Fund the sums specified in ORS 656.002 to 656.590. The repair or replacement of prosthetic appliances so injured shall be provided subject to the approval of the commission.
(2) * * * * *

paid at the rate of $6 per thousand board feet of lumber hauled by him. He furnished his own truck and bore all the expense of fueling, servicing and maintaining the truck. He was expected to make four trips a day—twenty miles each way—between the landing where he picked up logs and the mill where they were dumped, although there was no agreement to that effect. If, however, he did not make four trips a day, his employer would have gotten somebody else to do the hauling. He had the right to quit at any time he chose and the lumber company had the right to terminate the contract without liability for breach of contract. He could have driven to and from work in his passenger car; but, instead, he drove his truck home each evening rather than leave it at the landing or the mill, because the truck was secure at his home from thieves who might steal his gasoline and tools. Further, he kept at home grease and greasing equipment with which he serviced the truck in the evenings. He thus saved time in getting started to work. He was not paid for his time, but for the quantity of logs he hauled. He usually ate his lunch while driving, but occasionally might do so at the mill while the logs were being dumped.

■■ Plaintiff's theory of recovery is, as we understand it, that the circumstances of this case are such as to constitute an exception to the well established rule that injuries sustained by employees when going to and coming from their regular place of work are not deemed to arise out of and in the course of their employment. *King v. Ind. Acc. Com.,* 211 Or 40, 73, 309 P2d 159, 315 P2d 148, 318 P2d 272; *Hopkins v. State Ind. Acc. Com.,* 160 Or 95, 102, 83 P2d 487; *March v. State Ind. Acc. Comm.,* 142 Or 246, 20 P2d 227; *Finley v. State Ind. Acc. Com.,* 141 Or 138, 16

P2d 648. "The reason for the rule" it is stated in 8 Schneider, Workmen's Compensation Text (perm ed) 3-6, "is that the relationship of employer and employee is ordinarily suspended 'from the time the employee leaves his work to go home until he resumes his work, since the employee, during the time that he is going to or coming from work, is rendering no service for the employer.' "

Exceptions to the rule are listed by Schneider, op. cit., § 1712, as follows:

1. Injuries sustained while proceeding to or from work on the employer's premises;

2. Injuries sustained off the premises of the employer, but while in close proximity thereto and while using a customary means of ingress and egress;

3. Injuries sustained while off the premises, but while proceeding to perform, or while proceeding from the performance of, a special task or mission;

4. Injuries sustained while being transported to and from the place of employment pursuant to contractual obligation.

An enumeration of cases in which the facts were held to be grounds for making exceptions to the "going and coming" rule may be found in *Hopkins v. State Ind. Acc. Com.*, supra, 160 Or at 109. It is probable that all the cases there referred to fall within one or another of the generalizations stated by Schneider. We are not to be understood, however, as suggesting that there is a closed category of exceptions. There may be others; but whether so or not, we find nothing in the facts of the present case to justify a holding that it is not governed by the general rule. The facts do not bring the case within any of the exceptions stated by Schneider nor make applicable any of the cases reviewed in *Hopkins v. State Ind. Acc. Com.*, supra.

The plaintiff owned the truck. He was at his own home, miles away from the place where his work was to commence. He was not paid for the time spent in traveling to the job site. He was not in fact paid for his time at all, but for the results he accomplished—that is, the quantity of logs he hauled. He was in truth an independent contractor, though for the purposes of the compensation act he was carried on the books of the lumber company as an employee.

Plaintiff argues that in view of the requirement that he haul four loads of logs a day, it was of benefit to his employer for him to drive his truck to and from work because of the time saved in servicing the truck in the evening at his home. Eating his lunch while driving along the highway is also pointed to as a time-saving factor by which his employer profited. It is said that when the plaintiff got into his truck on the morning of the accident and started the motor he was to all intents and purposes on his way to his place of work, and that to return to the house for the purpose of picking up his lunch bucket which he had forgotten was incidental to the journey and to the service of his employer. Plaintiff further contends that, because the truck was not only his means of transportation, but also a necessary piece of equipment in the work of transporting logs for the lumber company, he should be regarded as rendering a service to his employer by "carrying employment impedimenta to and from work." Larson's Workmen's Compensation Law, § 18.24, quoted in *King v. Ind. Acc. Com.,* supra, 211 Or at 77.

Since plaintiff owned the truck and was free to service it whenever and wherever he chose, and to use any means of transportation and take any route that he chose in going to and from work, and to eat his

lunch at any time or place that he chose, we think that the argument based on benefit to his employer cannot be sustained. It is no different in substance from the contention in *Stuhr v. State Ind. Acc. Com'n,* 186 Or 629, 208 P2d 450, that a truck driver engaged to haul sand in his own truck, who was injured while undertaking to remove springs from a wrecked car to install them on his truck, thus enabling him to keep the truck on the job, sustained his injury in an accident arising out of and in the course of his employment. That contention was rejected by this court.

It may be observed in this connection that, while the lumber company expected the plaintiff to haul four loads a day, it was under no obligation to have logs ready for him to haul. Plaintiff conceded in his testimony that if the loading equipment broke down in the morning he would turn around and go home or some other place and he would receive no pay that day.

Plaintiff quotes in his brief the following from *Brazeale v. State Ind. Acc. Comm.,* 190 Or 565, 577, 227 P2d 804:

> "We think it is clear that the servicing of the trucks was an essential feature of the work of log hauling. It was one of the ordinary risks of decedent's employment as a log hauler and incidental to such employment."

In that case the plaintiff was injured while he was engaged on direct orders of his employer in servicing a truck which belonged to his employer. The distinction from the present case is too obvious to require elaboration.

A case in point is *In re Croxen,* 69 Idaho 391, 207 P2d 537. A claim for compensation under the Idaho Workmen's Compensation Act was made by the widow

of Croxen, a workman, who was killed at a railroad crossing when a train struck the log truck which he was driving. At the time of the accident the deceased was on his way from his home to the site of his employer's logging operations. His agreement with his employer called for payment of $6 per thousand with a minimum guarantee of $1 per hour in wages for an agreed average of eight hours per day. The court held against the claim on the ground that the injury to the deceased did not arise out of or in the course of his employment. We agree with the court's reasoning as set forth in the following excerpt from the opinion:

"This brings us to a discussion of whether or not the case at bar comes within any of the exceptions to the rule stated in the Clearwater Timber Company case, supra. Croxen cannot be said to have been under the direction or control, or subject to the orders of the employer at the time of the fatal accident. He received no pay for driving his truck from his home to the site of employment, and after reaching the premises of the employer would be paid in proportion to the quantity of logs hauled, with a minimum guarantee of $1 an hour. The deceased could, if he wished, have left his truck at the site of the employment and proceeded by any other means of travel he might choose. For his own convenience and not the convenience of the employer, he elected to travel to and from work in the instrumentality that he used in doing the work. The transporting of Croxen to and from his place of employment was a matter over which the employer had no control whatsoever. The employee in the case at bar was not performing a service necessary for the employer's business, and certainly it could not be said that the employer created the necessity for the deceased to be on a public highway. This is not a case where the employment required that the injured employee be on a street or road, and does not come within any of the excep-

tions to the rule that an injury sustained under such circumstances is not compensable." 69 Idaho at 396.

■ In support of his contention based on the asserted carrying of employment impedimenta to and from work, plaintiff cites *King v. Ind. Acc. Com.,* supra. The general rule upon this subject, as stated in Larson's Workmen's Compensation Law, § 18.24, and approved by the court in the *King* case, 211 Or at 84, is this:

> "The mere fact that claimant is, while going to work, also carrying with him some of the paraphernalia of his employment does not, in itself, convert the trip into a part of the employment."

In the *King* case we held compensable the accidental death of a workman who was drowned with his fellow workmen while they were crossing a bay in decedent's boat to their place of work, a boom site under construction. The only way to get to the job site was by boat and a boat was essential for use in the construction of the boom, the work which the men were hired to perform. A tug was furnished by the employers for this purpose, though, as stated, the decedent's boat was used to make the trip in question. In the circumstances, the court held that the accident arose out of and in the course of the decedent's employment, but the distinguishing features of the case were not only that there was no other way for the men to get to the job site than by boat, but also that there was an implied agreement that the employers were to furnish a means whereby the men could cross the bay. Neither of these elements is present here. The difference between that and the instant case is pointed up by the following statement in the opinion:

> "If we pause for a moment and contrast the em-

ployers' lack of interest in the means whereby the men went from their homes to the boat landing with the fact that the employers provided a boat whereby the men could go from the boat landing to the boom site, we have additional reason for the conclusion just stated." 211 Or at 86.

We have found it necessary to refer specifically to only a few of the numerous decisions of this and other courts cited in the briefs of counsel. The rules applicable to the question under consideration are well established and the cases have been reviewed at length in our prior opinions. See, especially, *King v. Ind. Acc. Com., Stuhr v. State Ind. Acc. Com'n, Hopkins v. State Ind. Acc. Com.,* all supra; *Lamm v. Silver Falls Tbr. Co.,* 133 Or 468, 277 P 91, 286 P 527, 291 P 375. To allow the present claim would be to sanction an unjustifiable departure from controlling precedents.

The judgment is reversed.