Argued and submitted October 27, 1998, reversed and remanded for
reconsideration April 28, 1999

## In the Matter of the Compensation of
## Mir Iliaifar, Claimant.

## Mir ILIAIFAR,
*Petitioner,*

*v.*

## SAIF CORPORATION
## and Don Rasmussen Co.,
*Respondents.*

## (WCB 96-05052; CA A98271)

981 P2d 353

Rex Q. Smith argued the cause and filed the briefs for petitioner.

Steven R. Cotton argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

EDMONDS, P. J.

Deits, C. J., dissenting.

## EDMONDS, P. J.

Claimant seeks review of a Workers' Compensation Board (Board) order upholding insurer's denial of his claim. We review for errors of law, ORS 656.298(7) and ORS 183.482(8), and remand.

Claimant sold used cars for employer. He injured his back at the car lot and was released from work by his physician. After several days and two telephone conversations with his supervisor, claimant complied with the supervisor's request to deliver his physician's authorization to be off work to employer. Claimant left his Beaverton residence in a car provided to him by his employer and headed to downtown Portland to the car lot where he worked. On his way, claimant stopped at his credit union, and, shortly after leaving its parking lot, he was injured in a car accident. It is the injury resulting from the car accident that is the basis of his claim.

Employer's insurer denied the claim, contending that claimant was not injured in the course and scope of employment. Claimant requested a hearing before the hearings division, and the administrative law judge ruled in favor of claimant. On appeal, the Board ruled that claimant's injury did not occur within the course and scope of his employment and made the following findings:

"Claimant, age 35 at the time of hearing, works as a car salesman for the employer. In connection with his employment, the employer furnished claimant with a 'demonstrator' vehicle, which he was to use primarily for transport to and from work.

"Claimant compensably injured his back at work on December 12, 1995. On Friday, December 22, 1995, claimant's treating doctor released him from work for the following week. The next day, claimant telephoned his supervisor and reported that he was released from work. The supervisor requested a copy of the off-work authorization, which claimant understood he was to personally deliver to the employer. Claimant advised his supervisor that he would deliver the off-work slip as soon as he could.

"On December 28, 1995, claimant again spoke with his supervisor by telephone. The supervisor again requested

the off-work slip and claimant advised he would deliver it the next day. On the afternoon of December 29, 1995, claimant left his home in Beaverton in his demonstrator car to deliver the off-work slip to his place of employment on Martin Luther King, Jr. Blvd. in Portland. On his way to the employer's premises, claimant stopped to do some banking at a downtown bank. After leaving the bank and while on his way to the employer's premises, claimant's vehicle was rear-ended. The rear-end collision resulted in claimant's herniated disc at L4-5."

The Board's findings are supported by substantial evidence in the record.[1] We take those findings and determine whether the Board drew the correct legal conclusions from them.

The Board determined that claimant's injury did not occur "in the course of employment." It explained:

"Here, we find it significant that claimant was not actually traveling to perform any 'work' on the day of his injury. Although he was going to the employer's premises at the time of his injury, he had been released from work because of his prior back injury. Therefore, neither the 'going and coming' rule nor the 'special errand' exception are directly applicable."

As to the "special errand" exception to the "going and coming" rule, it reasoned:

"Although the employer directed claimant to drop off a copy of his off-work slip, claimant's actions were not in furtherance of the employer's business (the sale of automobiles), nor was claimant acting on the employer's behalf at the time of his injury. Claimant made the trip primarily for his own benefit, to secure his entitlement to continued temporary disability benefits in connection with his prior injury claim. In addition, although claimant used his demonstrator vehicle to make the delivery, the employer did not have any right to control the time, manner of travel, or route to

---

[1] Claimant apparently understands the Board to have made an additional finding of fact that "Claimant made the trip primarily for his own benefit, to secure his entitlement to continued temporary disability benefits in connection with his prior injury claim." He argues that there is no substantial evidence to support that finding. After reviewing the Board's order of review, order on reconsideration and second order on reconsideration, we understand the above statement to be a legal conclusion relating to whether claimant fell within the "special errand" exception of the "coming and going" rule.

be taken on claimant's trip. Indeed, the record establishes that, regardless of whether or not claimant was actually required to personally deliver the off-work slip, he made the delivery when it was convenient for him to do so. * * * Finally we find nothing about claimant's mid-afternoon trip to the employer's premises on December 29, 1995 which resulted in a substantially increased risk over his usual trips to and from work. Under these circumstances, we conclude the 'special errand' exception does not apply, even by analogy." (Footnotes omitted.)

On review, claimant argues: (1) that his actions on the day of his injury were in furtherance of employer's business; (2) that the personal delivery of the "off-work" authorization was an act in the course of his employment; (3) that employer had the right to control the time, manner of travel or route of claimant's trip; and (4) that the "special errand" exception to the "coming and going" rule applies.

In *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596-97, 943 P2d 197 (1997), the Supreme Court summarized:

"For an injury to be compensable under the workers' compensation law, it must 'aris[e] out of' and occur 'in the course of employment.' ORS 656.005(7)(a). The 'arise out of' prong of the compensability test requires that a causal link exist between the worker's injury and his or her employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996); *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). The requirement that the injury occur 'in the course of' the employment concerns the time, place, and circumstances of the injury. *Krushwitz*, 323 Or at 526; *Norpac*, 318 Or at 366.

"This court views the two prongs as two parts of a single 'work-connection' inquiry, that is, whether the relationship between the injury and the employment is sufficient that the injury should be compensable. *Krushwitz*, 323 Or at 526; *Norpac*, 318 Or at 366. *See* ORS 656.012(1)(c) (Legislative Assembly finds that 'those injuries that bear a sufficient relationship to employment * * * merit incorporation of their costs into the stream of commerce'). Both prongs of the work-connection test must be satisfied to some degree; neither is dispositive. *Krushwitz*, 323 Or at 531; *Norpac*, 318 Or at 366. The work-connection test may be satisfied if the factors supporting one prong of the statutory test are

minimal while the factors supporting the other prong are many. *Krushwitz*, 323 Or at 531 (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983)). Both prongs serve as analytical tools for determining whether, in the light of the policy for which that determination is to be made, the causal connection between the injury and the employment is sufficient to warrant compensation. *Andrews v. Tektronix, Inc.*, 323 Or 154, 161-62, 915 P2d 972 (1996).

"Ordinarily, an injury sustained while a worker is going to or coming from work is not considered to have occurred 'in the course of' employment and, therefore, is not compensable. *Krushwitz*, 323 Or at 526 (citing *Cope v. West American Ins. Co.*, 309 Or 232, 237, 785 P2d 1050 (1990)); *Norpac*, 318 Or at 366. That general rule is called the 'going and coming' rule. The reason for the 'going and coming' rule is that the relationship of employer and worker ordinarily is suspended from the time the worker leaves work to go home until he or she resumes work because, while going to or coming from work, the worker is rendering no service for the employer. *Krushwitz*, 323 Or at 526-27 (citing *Heide/ Parker v. T.C.I. Incorporated*, 264 Or 535, 540, 506 P2d 486 (1973))." (Footnotes omitted.)

In addition, the *Hayes* court quoted favorably from our statement in *Allen v. SAIF*, 29 Or App 631, 633-34, 564 P2d 1086, *rev den* 280 Or 1 (1977):

"The statutory phrase 'arising out of and in the course of employment' must be applied in each case so as to best effectuate the socio-economic purpose of the Workers' Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. Various concepts have arisen from attempts to rationalize that purpose, *e.g.*, the going and coming rule, special errands,[2] lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, *etc.* Each is helpful for conceptualization and indexing, but there is no formula for decision. Rather, in each case, every pertinent factor must be considered as a part of the whole.

[2] The "special errand" rule is an exception to the rule that injuries that occur while coming to and going from work are not compensable and applies when the employee was in the process of performing a special task or mission. *Philpott v. State Ind. Acc. Com.*, 234 Or 37, 41, 379 P2d 1010 (1963).

It is the basic purpose of the Act which gives weight to particular facts and direction to the analysis of whether an injury arises out of and in the course of employment." (Citations omitted.)

We disagree with the Board that claimant's actions did not occur in the course of claimant's employment. For many years, Oregon has recognized that injuries are work related that occur in the performance of duties even though the claimant is off the employer's premises and performing duties that are not directly connected with the profit-making function of the employer's business or that are not considered within the claimant's typical job duties. *See, e.g., King v. Ind. Acc. Com.,* 211 Or 40, 309 P2d 159, 315 P2d 148, 318 P2d 272 (1957); *Reynolds v. State Ind. Acc. Com.,* 141 Or 197, 16 P2d 1105 (1932). In this case, claimant's uncontradicted testimony is that employer required the "off-work" authorization to be delivered to his supervisor "to make sure we are in the condition we are." Employer's written employee policy pertaining to on-the-job injury time losses requires "[a]n employee * * * to report to their manager on a weekly basis by reporting in the first day of their scheduled work week," and provides that the failure to report "could lead to disciplinary action." Employer can hardly argue that the delivery of the authorization was not for its benefit when its policies and reported requests required claimant to perform that act.

■       In light of the Board's finding under the circumstances that "the employer directed claimant to drop off a copy of his off-work slip," the requirement that the injury occur in the course of his employment is satisfied. The fact that claimant stopped to do some banking on the way does not affect the analysis. *See Savin Corp. v. McBride,* 134 Or App 321, 325-26, 894 P2d 1261 (1995) (holding that, although the claimant's stop at a bank was a personal errand, it was not so unrelated to her work as a traveling employee so as to constitute a substantial departure from her work duties). Moreover, the "going and coming" exception to work connectedness is inapplicable to this case because of employer's specific direction. By directing claimant to deliver the "off-work" authorization to the car lot at a time when he was injured and unable to work, employer assumed the risk that claimant would be injured in an activity that was other than the travel

involved in going to work on an ordinary work day. Because of the same circumstances, claimant's injury also arose out of the course of his employment. The Board erred when it concluded that claimant's injury was not compensable.

The dissent's criticism appears to be two-fold. First, it complains that we do not analyze this case under the "coming and going" and "special errand" rules. Second, it argues that we have embarked on our own factfinding mission contrary to the Board's findings. It points to the Board's assertion that claimant made the trip primarily for his own benefit. It says, "[a]n example of the majority's disagreement with the Board's findings of fact involves the Board's explicit finding that claimant's activities were not in furtherance of employer's business." 160 Or App at 127.

This case does not fit neatly under either the "coming and going rule" or the "special errand" exception to that rule. Claimant was not injured on the way to or from work at the car lot during a regularly scheduled workday. He was off work because of his work-related injury and was specifically directed by employer to bring the authorization to it. In that sense, he was "working" when he drove into the city to deliver the authorization. In contrast, the "special errand" exception to the "coming and going" rule generally applies when the claimant performs a special service for the employer while going to or coming from work. *Philpott*, 234 Or at 41. Rather than to apply a lock-step approach based on prior case law involving the two rules, we believe that *Hayes* instructs us to view the two-prong work-connection inquiry under all the circumstances to determine whether in light of the policy of the Workers' Compensation Law, the causal connection between the injury and the employment suffices to warrant compensation. In this case, the controlling fact resulting from the application of the *Hayes* formulation is that employer directed claimant to make the trip to downtown Portland at a time when he was off work.

As to the dissent's second criticism, it fails to read our opinion or the Board's opinion correctly. As we said previously, "[w]e take [the Board's findings] and determine whether the Board drew the correct legal conclusions from them." 160 Or App at 119. The appropriate legal, as opposed

to factual, inquiries are whether claimant's injury arose out of and in the course of employment. The Board's "finding" that claimant made the trip primarily for his own benefit to secure his entitlement to benefits is not a "finding of fact" but rather a conclusion of law drawn from the fact that employer directed claimant to bring the authorization to employer. The operative fact (that employer directed claimant to act) is uncontested. The benefits of delivering the authorization to the employer are derived from the legal implications of claimant's compliance and the injury that he suffered as a result. What weight his compliance is given is part of the calculus in determining whether claimant's injury occurred in the course of his employment.

Reversed and remanded for reconsideration.

**DEITS, C. J.,** dissenting.

The Board concluded in this case that claimant's injury did not occur "in the course of" his employment and, therefore, that his injury was not compensable. The majority concludes that claimant's injury did occur "in the course of" his employment and, consequently, reverses the Board. In my opinion, the majority reaches that result by misapplying applicable case law. I believe that the Board correctly analyzed and decided this case. Accordingly, I dissent.

The Board begins its opinion by correctly articulating the applicable law. It explains that an injury is compensable if it "arises out of" and occurs "in the course of" the worker's employment. *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 867 P2d 1373 (1994). As the Board points out, these two prongs are part of a "work connection" inquiry to determine whether the relationship between the injury and the employment is sufficient to conclude that the injury is compensable. Both the "arising out of" and the "in the course of" prongs must be satisfied to some degree. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 919 P2d 465 (1996).

The Board then goes on to explain that, generally, an injury that occurs while a worker is going to or coming from work is not considered to have occurred "in the course of" employment and is not compensable. That general rule is called the "going and coming" rule. As the Board notes, the

reason for the "going and coming" rule is that the relationship of employer and worker ordinarily is suspended from the time that the worker leaves work to go home until he or she resumes work. *Id.* at 527.

The Board then recognizes that the courts have determined that there are some exceptional circumstances that involve a worker traveling to and from work that may be considered to be "in the course of" a worker's employment. The Board notes that one exception of significance here is the "special errand" rule. Under that exception, an injury may be compensable even if incurred while off the employer's premises traveling to and from work, if the employee is "acting in the furtherance of the employer's business at the time of the injury" or if the employer had "a right to control the employee's travel in some respect." *Id.* at 528.

In applying the above legal principles, the Board first concludes that, because claimant was not actually traveling to perform any "work" on the day of his injury, neither the "going and coming" rule nor the "special errand" exception is applicable to this case.[1] The Board explains that that conclusion alone should end the work-connection inquiry and would support the conclusion that claimant's injury was not compensable. However, the Board goes on to hold that, even assuming that the "going and coming" rule and the "special errand" exception apply directly or by analogy to circumstances where the employee is not traveling to the employer's premises to "work," but for an employment-related purpose, the requirements of the special errand rule are not met here and, accordingly, the injury is not in the course of claimant's employment and is therefore, not compensable.

The majority begins its analysis of this case by correctly explaining the two prongs of the work-connection test discussed above. It is after that, however, that, in my view, the majority goes astray. Despite the fact that there is a well established legal framework for analyzing the compensability of injuries that occur while a worker is traveling to and from the workplace, namely the "going and coming rule" and

---

[1] The Board concluded that there was no evidence that travel was part of his employment, and claimant does not argue otherwise.

the "special errand" exception to that rule, and despite the fact that this framework was the basis of the Board's decision and the focus of claimant's arguments, the majority does not appear to deem it necessary to address those concepts. Rather, the majority quotes language from the Supreme Court's decision in *Fred Meyer v. Hayes*, 325 Or 592, 942 P2d 197 (1997), explaining the work-connection test first set forth in the Supreme Court's 1994 *Norpac* decision. The majority then refers to language from a 1977 decision of this court, *Allen v. SAIF*, 29 Or App 631, 564 P2d 1086, *rev den* 280 Or 1 (1977), for the proposition that all of the concepts such as the "going and coming" rule and the "special errand" rule are "helpful for conceptualization and indexing, but there is no formula for decision." Pursuant to the language from *Allen*, the majority then proceeds to analyze this case without considering the "going and coming" rule.

In my opinion, the case law does not support the proposition that the legal framework developed to analyze cases involving workers traveling to and from the workplace need not be addressed at all. The only support that the majority relies on for the approach that it takes is the language from our decision in *Allen*, noted above. The majority states that this language was "quoted favorably" by the Supreme Court in *Fred Meyer*. 160 Or App at 121. However, the reference in *Fred Meyer* to the language in *Allen* simply cannot be read as an abandonment of the existing legal framework for analyzing the compensability of injuries that occur while an employee is traveling to and from the workplace. As discussed above, the premise underlying the general rule, that injuries incurred while a worker is traveling to and from work are not compensable, is that the relationship of employer and employee is suspended from the time that the worker leaves work until the time that the worker resumes work. The exceptions to that rule have been specifically and narrowly defined. *Krushwitz,* 323 Or App at 529. It makes no sense to conclude that the carefully defined limits applied when reviewing the compensability of injuries that occur while a worker is traveling to and from his or her place of employment are abandoned if the worker is not traveling there to work, but to carry out some other employment-related purpose.

I am not sure that I fully understand the basis of the majority's decision here. Although the majority apparently does not believe it necessary to consider the "going and coming" rule and its exceptions, and does not directly address them, the points on which the majority relies to reach the conclusion that the Board was wrong appear to involve elements of the "special errand" exception to the "going and coming" rule. The majority appears to accept the Board's findings and agrees that the Board's findings were supported by substantial evidence. It explains that its disagreement with the Board is that, in its view, the Board's findings do not lead to the legal conclusion that claimant was injured in the course of his employment. Inexplicably, however, in reaching that conclusion, the majority seems to quarrel with the Board's findings of fact.

An example of the majority's disagreement with the Board's findings of fact involves the Board's explicit finding that claimant's activities were not in furtherance of employer's business. The Board found:

> "Although the employer directed claimant to drop off a copy of his off-work slip, claimant's actions were not in furtherance of the employer's business (the sale of automobiles), nor was claimant acting on the employer's behalf at the time of his injury. Claimant made the trip primarily for his own benefit, to secure his entitlement to continued temporary disability benefits in connection with this prior injury claim." (Footnote omitted.)

Claimant moved for reconsideration of the Board's decision, arguing that he was acting in furtherance of the employer's business and, therefore, came within the "special errand" rule, because he was injured while driving a demonstrator vehicle and because the employer had an interest in seeing him in person to determine his condition. In rejecting those arguments, the Board explained:

> "In our prior order, we expressly concluded that these facts did not render claimant's injury *per se* compensable. We explained that claimant was not acting in furtherance of the employer's *business* (the sale of automobiles) nor was he acting on the employer's behalf at the time he was injured. We found that claimant made the trip primarily for his own benefit; *i.e.*, to secure his entitlement to continued

temporary disability benefits. We also noted that claimant was not under the employer's control at the time of his injury. Although claimant was driving a 'demonstrator' vehicle furnished by the employer, claimant had been released from work and the employer did not control the time, manner of travel, or route to be taken on this particular trip to the employer's premises." (Emphasis in original; footnote omitted.)

Claimant filed a second motion for reconsideration of the Board's order on that point, and the Board again rejected his argument, explaining:

"We conclude that even if claimant's trip to the employer's premises did not affect his entitlement to temporary disability and even assuming the employer had an interest in having injured workers personally deliver documentation of their medical status, claimant's trip did not fall within the 'special errand' exception (even by analogy) because claimant was not acting in furtherance of the *employer's business* at the time of the injury." (Emphasis in original.)

The majority rejects those findings, concluding that they involve a question of law and, therefore, in its view, it is entitled to substitute its judgment on the question. The majority states:

"Employer's written employee policy pertaining to on-the-job injury time losses requires 'an employee * * * to report to their manager on a weekly basis by reporting in the first day of their scheduled work week,' and provides that the failure to report 'could lead to disciplinary action.' Employer can hardly argue that the delivery of the authorization was not for its benefit when its policies and reported requests required claimant to perform that act." 160 Or App at 122.

In my opinion, the question of whether claimant's activities were in furtherance of employer's business involves a question of fact. The Board found that these activities were *not* in furtherance of employer's business and that finding is supported by substantial evidence. Accordingly, I would hold that the Board's legal conclusion that these activities did not

come within the "special errand" exception and, consequently, were not "in the course of" claimant's employment is correct.

The second point that the majority relies on to support its legal conclusion that claimant's injuries were compensable is the fact that the employer directed the claimant to drop off a copy of his off-work slip. The majority concludes that the employer's direction creates a sufficient work connection to support the conclusion that claimant's injury was compensable. In reaching this conclusion, however, I believe that the majority again uses the wrong legal framework. Under the applicable case law, the inquiry as to the significance of whether this activity was directed by the employer should be analyzed in the context of the "special errand" exception to the "going and coming" rule. These rules were specifically designed to analyze circumstances where an injury occurs while the worker is traveling to the place of employment. Again, as noted above, it makes no sense to conclude that if a worker is not traveling to the employer's place of business to work, but to carry out a work-related purpose, *less* stringent standards should apply in determining if the injury is compensable. *Krushwitz*, 323 Or at 528.

The Board made explicit findings on this point. It found:

> "In addition, although claimant used his demonstrator vehicle to make the delivery, the employer did not have any right to control the time, manner of travel, or route to be taken on claimant's trip. Indeed, the record establishes that, regardless of whether or not claimant was actually required to personally deliver the off-work slip, he made the delivery when it was convenient for him to do so. Finally, we find nothing about claimant's mid-afternoon trip to the employer's premises on December 29, 1995 which resulted in substantially increased risk over his usual trips to and from work. Under these circumstances, we conclude that the 'special errand' exception does not apply, even by analogy." (Footnote omitted; citation omitted.)

The Board's findings are supported by substantial evidence. In view of these findings of fact and applying the correct legal framework, I would hold that the Board did not err in concluding that claimant's activities did not come within the

"special errand" rule and, consequently, were not "in the course of" his employment.

For all of the above reasons, I would affirm the Board's decision and, accordingly, I respectfully dissent.